## Smith *versus* Emerson.

*Action against Sheriff.—Return of, how far Evidence.—Fraudulent Concealment of Property, when Evidence in bar of the Action.—Declaration of Defendant as to fraudulent intent, when Evidence.—Execution against Partnership Property for Debt of Partner.*

1. A sheriff's return to a writ is both evidence for him, and is to be most strongly construed against him.

2. Hence, a written demand by the defendant in an execution, for the benefit of the Exemption Law, dated on the day the writ came into the hands of the sheriff and returned by him attached thereto, without note or statement giving

[Smith v. Emerson.]

his reasons for disregarding it, is evidence that he received the demand in due time in a suit against him.

3. Where evidence of fraudulent concealment of property on the part of the plaintiff in such action, was admitted in mitigation of damages, which if believed, would, under the charge, have made the damages only nominal, it was not error in the court to refuse to admit it in bar of the action.

4. Evidence of the declarations of the plaintiff of his intent fraudulently to conceal other property from an expected levy on the part of the same creditor, made two months after the levy and sale under which he had claimed his exemption, is not admissible in favour of the sheriff in a suit against him for disregarding it.

5. An execution-creditor of one of two partners may levy upon partnership effects as well as upon other personal property of his debtor, though the goods *in specie* are not bound thereby nor do they pass by sale under the writ, but only the interest of the debtor on final settlement of partnership accounts:. and a concealment of that interest is fraudulent.

ERROR to the Common Pleas of *Indiana county.*

This was an action of trespass, brought by William E. Emerson against Joseph R. Smith, sheriff of Indiana county, for selling a horse which he had levied on and sold, regardless of plaintiff's claim to exemption under the act exempting goods to the value of $300 from levy and sale on execution.

The case was this:—On the 3d day of May 1858, Ignatius Heim obtained a judgment against Emerson for $193.29, which remained unsatisfied till the summer of 1860, when the plaintiff issued an execution for the debt, interest, and costs; in pursuance of which writ of execution the defendant in this case, then sheriff, on the 28th day of July 1860, levied on the horse in dispute. On the day of the levy, Emerson gave written notice to the sheriff that he claimed the horse under the Act of Assembly exempting $300 worth of property from levy and sale. The sheriff, however, disregarded this claim, and on the 22d of August following sold the horse for $129. This suit was then brought.

The errors alleged to have been committed on the trial were these:—

1. The plaintiff offered *fi. fa.* No. 88, September Term 1860, Ignatius Heim against William E. Emerson, with notice of claim by defendant to the sheriff that he claims the benefit of the Exemption Law attached thereto, which was admitted.

2. The defendant proposed to prove by Robert Evans that on the day of the sheriff's sale of the horse, the plaintiff came to him and wanted him to buy the horse in for him, and offered him money for that purpose; that his object in this was to hold the horse in Evans's name, so that the property could not be afterwards levied on by Heim; that at this time plaintiff exhibited a large amount of money belonging to him, saying that he had money enough to buy Heim and keep him, but that he was determined to keep his property in such situation that the Dutchman could not reach it; that before and after that time, he brought

horses to Evans's tavern, wanted him to buy them and give his note, so that if Heim would levy on them he (Emerson) could say that the property was not his, but belonged to the witness; which was rejected.

3. The defendant proposed to prove by same witness that in October 1860, after the sheriff's sale of the horse, the plaintiff brought other horses to his tavern, and wanted him to buy them and give his note, so that if Heim would levy on them he could say they belonged to Evans. And that his object in this, as expressed by Emerson at the time, was to prevent Heim from levying upon them, and making the balance of his judgment; which was also rejected.

4. The plaintiff requested the court to charge : " That if the jury believe that the horses and funds testified to have been in possession of William E. Emerson, about the time of the levy and sale of his horse by Sheriff Smith was made, were the joint property of said Emerson and his partner, O. M. Irvin, then and in that case it would not be improper or fraudulent in said Emerson to endeavour to prevent said property from being levied upon, or applied to the payment of his private and individual debt to Ignatius Heim, but, on the contrary, was highly proper and consistent with integrity ;" which point was affirmed.

The court also charged the jury as follows :—

" A general design to cheat creditors in concealing other property is not enough. It must be a fraudulent device in regard to the property levied on." " In looking over the testimony I confess I see no such evidence of conduct so .inconsistent with his claim of exemption as would operate to defeat that right, and the sheriff ought to have allowed it and proceeded to appraise the property ; and not having done so, we therefore think the plaintiff is entitled to recover."

*H. W. Weir* and *J. D. McClaren*, for plaintiff in error, who was defendant below, in support of the first assignment of error, argued that the paper was no part of the record or execution; that it contained no evidence by endorsement or otherwise that it had ever been in the possession of the sheriff; and there was no evidence to show that it had been returned with the execution, or any time afterwards put there by the sheriff. Neither did the plaintiff give any evidence that it had been served on the sheriff at the proper period, or that he had even notice of it at any time. That to entitle a defendant in an execution to the exemption provided by the Act of 1849, it has been repeatedly held that he must be prompt and vigilant, and give the officer in charge of the process " notice of his claim before the day of sale, and generally before the advertisements are issued :" Hammer *v.* Freese, 7 Harris 255; Rogers *v.* Waterman, 1 Casey 182; Diehl *v.* Holben, 3 Wright 217.

[Smith v. Emerson.]

On the second point they cited and relied on Hucy's Appeal, 5 Casey 220; Freeman v. Smith, 6 Id. 266; Straus's Executor v. Becker, 2 Wright 190, and argued that a debtor who acts dishonestly and fraudulently, or in any other improper way hinders or delays his creditor in the collection of his money, waives or forfeits the exemption the law otherwise afforded him.

In support of the third assignment of error, they argued that the evidence offered tended to show Emerson's dishonest intention, touching his indebtedness to Heim, that it connected that intention with his fraudulent design at the time of the sheriff's sale, and had a specific relation to the transaction under investigation. In the language of the law, "it was calculated to persuade the reasonable men in the jury box" that the allegation of fraud was "well founded," and should therefore have been admitted: citing Stauffer v. Young, 3 Wright 460.

In support of the fourth assignment of error, they cited and relied on McCarty v. Emlen, 2 Yeates 193; Bell v. Newman, 5 S. & R. 87, 90; Wharton v. Grant, 5 Barr 490.

On the fifth assignment of error, they insisted that the court below erred in instructing the jury that the fraudulent device must be in regard to the property levied on, and argued that a general design on the part of Emerson to cheat Heim by concealing other property, was enough to deprive him of his right under the Act of Assembly.

*Banks & White*, for defendant in error.—1. The notice, by the action of the sheriff in returning it with the writ, became part of the record like the return, and was part of his return. 2. The ruling of the court is in strict accordance with the law as laid down in the case of Freeman v. Smith, 6 Casey 264, and was quite as favourable to the defendant below as he had any right to ask on the evidence: Straus's Executor v. Becker, 2 Wright 190, cited by plaintiff in error, is one wherein the defendant, when the officer came, denied that he was the owner of the property, and asserted that it belonged to his wife, and has no resemblance to the one now before the court. 3. The transaction here proposed to be brought before the court and jury by the defendant below, adduced, as is alleged, a month or more after the sale of the property, and after the the return day of the writ, could not by any possibility have a tendency to delay or hinder the sheriff in proceeding to collect the debt in question on the writ on which the levy and sale were made, and was therefore irrevelant and improper. 4. It would have been highly improper in Emerson to have applied the funds furnished him by his partner to carry out their contract with the railroad company to pay his private debt, and there was no error in the answer given to plaintiff's point.

[Smith *v.* Emerson.]

The instruction complained of in the fifth assignment of error is in strict conformity with the law as laid down in the case of Freeman *v.* Smith, 6 Casey 264.

The opinion of the court was delivered at Philadelphia, January 5th 1863, by

WOODWARD, J.—There is no error in the first bill of exceptions. The sheriff returned with the *fi. fa.*, and attached to it a written demand of the defendant, for the benefit of the Exemption Law, dated the very day the writ came into the sheriff's hands. In a suit against the sheriff, that paper, so returned by him without an explanatory note, was evidence that he had received the defendant's demand in due time. A sheriff's return to writs, always under his own control, and always evidence for himself, should be construed most strongly against him. If the demand was not made, as its date imported, why did he return it with the writ? Or, in returning it, why did he not specify the time it came to hand, and any reason he had for disregarding it? In view of what he did, and what he left undone, the necessary conclusion of law is, that he received the notice in due time, and that the evidence of it was properly admitted.

Nor is the second error sustained. The court admitted the testimony of Evans to go in mitigation of damages, but not in bar of the action, and they explained that nominal damages would be six cents or a dollar, and compensatory damages the value of the property seized and sold. The instruction amounted to this—that if the jury believed the plaintiff below had been guilty of fraudulently concealing property to more than the value of $300, his damages should be nominal, but that if he was an honest debtor his damages should be compensatory. This was according to the reasoning of brother Thompson, in Freeman *v.* Smith, 6 Casey 264, though the ruling affirmed in that case was, that a plaintiff who thus fraudulently concealed property was not entitled to recover at all. In a suit brought for compensatory damages, the distinction between nominal damages and total defeat is not, practically, of much consequence. And since the evidence was admitted for one of these purposes, it is no just cause of complaint that it was not admitted for the other. Had the jury believed Evans, and given full effect to his evidence, they would have found, under the instructions they received, only six cents or a dollar in damages, and then we should not have seen the defendant here complaining. It is apparent, therefore, that he is here not on account of the error of the court in submitting the evidence in the manner they did, but because the jury did not give it all the effect hoped for. If the jury erred, we have no correctional power. It is enough for us that we see no error in what the court did.

The evidence offered in the third bill of exceptions related to a period two months after the levy and sale, and was properly rejected as too late.

In the answer given to the plaintiff's second point we think there was error. It appeared in evidence that early in the summer of 1860, the plaintiff and one O. M. Irvin formed a partnership for the purchase of horses for the East Liberty Railroad Company, the capital being furnished by Irvin, the business done by Emerson, and the profits equally divided between them. The plaintiff's second point founded on this evidence and affirmed by the court, was in these words:—

2. That if the jury believe that the horses and funds testified to having been in possession of William E. Emerson, about the time the levy and sale of his horse by sheriff Smith was made, were the joint property of said Emerson and his partner, O. M. Irvin, then, and in that case, it would not be improper or fraudulent in said Emerson to endeavour to prevent said property from being levied upon, or applied to the payment of his private and individual debt to Ignatius Heim; but on the contrary was highly proper and consistent with integrity.

Answer.—This point is answered in the affirmative.

No doubt it was the affirmance of this point which destroyed the effect of Evans's testimony. Very dishonest and disgraceful conduct on the part of the plaintiff was proved by Evans, but then if that conduct related to partnership property and funds, it was in the language of the point "highly proper and consistent with integrity." We cannot think so.

An execution-creditor of one of two partners has as good a right to levy on partership effects as upon any other personal property of his debtor. The only peculiarity about such a levy is, that it does not bind the goods in specie, nor does the sale, in pursuance of the levy pass them, but the interest of the debtor in the final settlement of partnership accounts in respect to such goods is what is seized and sold. That interest, however, is leviable, and a fraudulent concealment of it is just as iniquitous, both in law and morals, as the fraudulent concealment of any other leviable effects. There is no room for a distinction here. Over and over again we have said the exemption statutes were intended for honest men, and not for rogues, and the adjudged cases show what kind of shuffling and falsehood amount to concealment of property. A dishonest partner cannot be an honest man. What if the roll of paper money showed to Evans by the plaintiff before and on the very day of sale were partnership funds? And what if the money which the plaintiff declared he gave to his father to buy the horse and saddle belonged also to the firm? Still Emerson had an interest in that money, and in whatever horses the firm possessed. And in view of the declara-

[Smith *v.* Emerson.]

tions and overtures which he made to Evans, the jury would have
been very likely to infer that his interest exceeded $300. Then
why was not his conduct as well calculated to delay, hinder, and
defraud his creditor as the conduct that has been condemned in
any of the reported cases? Nay, what but this very motive did
he avow when he told Evans he had money enough in his pocket
to pay Heim his judgment, but that he would never do it if he
got worth a million of dollars.

Whether Evans's testimony was credible or not was for the jury,
and whether, if believed, it would have convinced them that Em-
erson was concealing $300 worth of property we cannot say, but
we are bound to say that it was error to instruct the jury that
though such conduct and declarations related to property of
which Emerson was only part owner, it was highly proper and
consistent with integrity. It may be wholly due to that instruc-
tion that the plaintiff recovered.

The second point should have had a different answer. Part-
nership property is indeed to be first applied to partnership
debts, but this principle does not interfere with the right of a
creditor of one partner to levy on his interest, and where, as in
this case, there is no allegation of partnership debts, the setting
up an abstract principle to excuse fraudulent concealment of a
leviable interest was a manifest mistake.

The language of the charge cited in the fifth assignment is
very strong, and amounts almost to a withdrawal of the cause
from the jury. Taken in connection with all that was said, it
was not probably intended to be a binding direction, but on ano-
ther trial it will doubtless be considerably modified.

The judgment is reversed, and a *venire de novo* awarded.