## Thomson's Estate.    Thomson's Appeal. Roberts's Appeal.

[Marked to be reported.]

*Partnership—Unincorporated joint stock company dealing in lands—Principal and income—Life tenant and remainder-men.*

An unincorporated joint stock company organized to trade in land is essentially a partnership, in which the shares of the members do not represent land as such but an interest in the venture; and dividends declared out of the proceeds of sales made by the association, are to be regarded as profit made in the business, so long as the capital stock remains unimpaired.

An unincorporated association was organized to buy land in large tracts, lay out streets and lots upon it, and sell the lots at such prices as to yield profits on the venture. The titles were not made to the members of the

association as tenants in common, but to trustees who conducted the business of making sales, executing and delivering deeds to purchasers, collecting the purchase money, and doing such other acts on behalf of the company as the nature of the business required. The trustees rendered accounts at stated intervals, and dividends were from time to time declared and paid. The capital stock as originally invested remained unimpaired. *Held*, that as between the life tenant and remainder-man of the stock, the dividends were income and not principal.

Oliver's Est., 136 Pa. 43, followed; Vinton's Ap., 99 Pa. 434, and Hubley's Est., 41 Leg. Int. 66; 16 Phila. 327, distinguished.

*Principal and income—Stock bonus—Life tenant and remainder-man.*

The price realized by the sale of a privilege incident to the ownership of stock of a corporation, to subscribe to the bonds of another corporation whose stock is to be given as a bonus to the subscriber, is not income from the stock to which the privilege is incident.

The above stock bonus arrangement characterized as a gross violation of law.

Argued Jan. 19, 1893. Appeal, Nos. 400 and 454, Jan. T., 1892, by Lavinia F. Thomson and George B. Roberts et al., from decree of O. C. Phila. Co., Jan. T., 1881, No. 310, dismissing exceptions to adjudication. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Audit of account of Lavinia F. Thomson et al., trustees of J. Edgar Thomson, deceased.

The auditing judge, HANNA, P. J., found in effect that J. Edgar Thomson, president of the Pennsylvania Railroad, died in May, 1874, leaving a large estate to trustees, the income of which was awarded to Mrs. Thomson, his widow, by the decree of this court (92 Pa. 407), and the corpus of the estate was directed to be held by his trustees, according to the purposes of the trust for those in remainder. At the time of his death, decedent was the owner of certain shares of stock in the National Land and Improvement Co. of Colorado, in the Western Land Association, in the Dennison Land Co., and in the Bell's Gap Railroad Co. The land companies were organized for the purpose of speculating in land, and after decedent's death large dividends were declared by each of these companies as result of profits, earned by them subsequent to his death, by the sale of lands belonging to the associations prior to his death. Dividends contained in former account, equal to amount of capital invested, were placed to principal account. The lands

unsold and the assets of the companies were equal to the whole capital stock at par. The court awarded as income to the life tenant dividends from the National Land and Improvement Co., and the Western Land Co., but disallowed the claim as to the dividends of the Dennison Land Co., awarding them to the trustees as accumulation of capital. The court also awarded to the trustees the proceeds of the sale of the privilege to take at par shares of new stock to be issued by the Bell's Gap Railroad Co., recited in the opinion of the Supreme Court. Exceptions by both the life tenant and trustees were dismissed by the court on the authority of Vinton's Ap., 99 Pa. 434, and Hubling's Est., 41 Leg. Int. 66, in an opinion by PENROSE, J., 1 Dist. R. 139.

*Errors assigned* by Lavinia F. Thomson were, inter alia, (7) in not awarding to appellant as income all sums of money included in the account which had been received from the Dennison Land Co.; (8) in awarding to the trustees of Mr. Thomson's estate as principal the sum of money included in the account as received by them from the sale of the privilege to subscribe to stock of the Clearfield and Jefferson Railroad.

*Errors assigned* by George B. Roberts et al., were, inter alia, (3) in awarding to the cestui que trust for life the sums received by the trustees from the Western Land Association; (4) in awarding to the cestui que trust for life the amounts received by the trustees from the National Land Improvement Company.

*Henry La Barre Jayne, George W. Biddle* with him, for appellant.—While the price of an option to subscribe to stock may belong either to the tenant for life, or to those in remainder, according to the circumstances of each particular case, the price of an option to subscribe to bonds must always belong to the one who is entitled to the dividends of the corporation issuing them.

Dividends of earnings made after death, whether in cash, scrip or stock, are income, and payable to the life tenant: Earp's Ap., 28 Pa. 368; Smith's Est., 140 Pa. 344.

If it be suggested that the option included a subscription to stock as well as bonds, it must be remembered that this stock was not stock of the Bell's Gap Railroad, nor did it represent

any share in the property or profit of that road. It was the stock of a new road without immediate earning capacity, mortgaged to its full value, and whose only chance of ever being of any value lay in the lease of the new road to the old road, at a rental which, although the evidence does not disclose it, was at that time merely nominal.

The only test of the profits of any business is, whether the gain has been made as a direct result of the application of capital and industry to the particular business in which they were embarked, for "the cash dividends made by a land company are held to belong to the tenant for life, though they are derived from the sale of its real estate, which is its capital, this being its only method of earning dividends:" Minot v. Payne, 99 Mass. 104; Oliver's Est., 136 Pa. 60.

*John G. Johnson,* for appellee.—If the present appeal be sustained, it must be upon the ground that where a cestui que trust of land dies, and where such land, subsequently to the decease, is sold for a sum sufficient to repay the original investment, all further proceeds of sale pass to the life tenant, and not to the remainder-men. We submit that no decision of this court has ever laid down any such proposition, and that a decision to this effect will be violative of the general principles upon which the interest of life tenants and of remainder-men have been adjusted.

In Oliver's Estate it was held, that where something had occurred after the decease of the creator of the trust, which added value, the profit which thus resulted from such subsequently occurring event enured to the benefit of the life tenant. It was not there held, however, that the proceeds of sale of lands sold after such death, where there had been no such subsequently occurring event, were other than principal.

If all the proceeds of the sales of land, in excess of their value at the time of the death of the creator of a trust, are distributable as income, it will follow that if a testator, a cestui que trust of lands, dies possessed of an interest therein, at one time possibly very valuable, but which then, temporarily, happens to be of little value, because of a recent depreciation, his estate, in case of a rise, after his decease, to its old value, will be depleted. The only safe rule is, to hold that the proceeds

of sale of principal shall continue, as between life tenant and remainder-men, to retain the same status occupied by the lands themselves.

The Bell's Gap Railroad Company was incorporated for the purpose of earning money for its stockholders by the transportation of passengers and of freight. A guarantee by it of the bonds of a promoted company was not within the usual course of its business. The transaction was a very unusual one. It was paid an equivalent, in the privilege accorded of subscribing at par for the bonds and accompanying stock. It awarded this privilege to its stockholders. We contend that the privilege affected the value of the principal of the guarantor corporation to the extent of the premium, which was paid. The privilege was the "quid" for the "quo" of the guarantee.

The principal was impaired in the case now before the court, presumably to the extent of the premium. One was the equivalent of the other. If the premium be held to be principal, the party whose principal was impaired receives compensation. The life tenant will only suffer to the extent of the loss of interest upon the impairment. She is fully compensated by receiving the interest upon the sum paid as premium for the privilege.

*John G. Johnson*, for appellants, Geo. B. Roberts, et al.— Where the sums distributed to the shareholders represent the proceeds of sale of lands there is a necessary depletion of capital, if the proceeds be paid to the life tenant. After all the lands are sold, if all their proceeds have been distributed to the life tenant, the remainder-men will take nothing. If a part of the lands remain unsold, though they be valuable at the time of the distribution of the proceeds of sales of disposed-of land, it does not follow that their value will be maintained. We submit that the only safe rule is that which was established by this court in Oliver's Estate, viz., to hold as principal all the proceeds of sale by a corporation of its lands, unless it be shown that the amount realized by the sale resulted from happenings subsequent to the creation of the trust.

LAVINIA F. THOMSON'S APPEAL.

OPINION BY MR. JUSTICE WILLIAMS, February 27, 1893:
Trade consists so largely in the purchase and sale, or ex-

change, of raw materials or manufactured products that the word naturally suggests personal chattels as the commodity dealt in. But real estate may become an article of trade to be bought and sold like any other commodity. When this is done by an individual in his own name his purchases have all the ordinary incidents connected with the ownership of land. When it is done by a copartnership the artificial person owns the land as it would own the stock of goods bought for a firm, and the interest of the individual partners is in the net profits made in the business. For this reason a purchaser of the interest of one partner, in a firm of which he is a member, takes no part of the partnership property in kind, but only the proportionate share in the fund or property remaining after the business is closed and settled: Seibert v. Seibert, 1 Brewster, 531. And a purchaser at sheriff's sale stands on no higher ground. One who buys at sheriff's sale the interest of a partner buys only a right to require an account and a distributive share in the surplus, if there be any: Smith v. Emerson, 43 Pa. 456. The commodity in which the partnership deals does not increase or diminish the rights of the members, or affect the rules to which we have referred; but real estate held as partnership property is to be treated in the same manner as personal property is treated: Moderwell v. Mullison, 21 Pa. 257.

An unincorporated joint stock company organized to trade in land is essentially a partnership, and lands held by such association are not subject to judgment or levy and sale at the suit of a separate creditor of one of the members: Kramer v. Arthurs, 7 Pa. 165. Oliver's Estate, 136 Pa. 43, dealt with such an association, and we there held that the several shares of the members of the association did not represent land as such but an interest in the venture; and that a dividend declared out of the proceeds of sales made by the association was to be regarded as profit made in the business conducted by the association, so long as the capital stock remained unimpaired. The rule laid down in that case is a sound one. Its application is not to be confined to cases which present all the facts, and in the same manner, as were found in that case. On the other hand it is a rule of general application, where a trading company, whether incorporated or unincorporated, engages in the business of buying and selling land for profit just as well as where

the commodity dealt in is dry goods, or agricultural implements or live stock. The company owns its stock in trade. The members are entitled to share in the profits of the business while it lasts, and to a share in what is left after dissolution and payment of debts. The profits are income. A division of assets after dissolution is a return of capital, at least to the extent of the original investment.

In the case now before us the auditing judge found as a fact that the Dennison Land Company was "an unincorporated association and therefore a copartnership." The sole object of the association was to buy land in large tracts, lay out streets and lots upon it, and sell the lots at such prices as to yield large profits on the venture. The titles were not made to the members of the association as tenants in common, but to the trustees who conducted by themselves or agents the business of making sales, executing and delivering deeds to purchasers, collecting purchase money, and doing such acts on behalf of their principal, the land company, as the nature of the business required. They rendered an account at stated or other intervals to the association of their receipts and disbursements, and from the moneys made from sales or rents dividends were from time to time declared and paid. The evidence shows that the capital orginally invested has not been impaired. These dividends therefore represent the profits realized from the business done by the association in the line of trade for which it was organized and in which it has been engaged. As between the life tenant and the remainder-man the money so realized is income derived from the investment made in the capital of the unincorporated association, bearing the name of the Dennison Land Company. The capital itself belongs to the remainder-man, but the income cannot be distinguished from that derived from an investment in ground rents or interest-bearing bonds.

The cases cited by the court below in support of a different doctrine do not do so. In Vinton's Ap., 99 Pa. 434, the fund in controversy was produced by a sale of part of the franchises of a gas company which was clearly not income but part of the capital. Hubley's Ap., 41 Leg. Int. 66, was the case of an increase in the value of a trust investment, not of income from it. Here we have an investment in an association organized

to deal in land as a commodity. We have profits resulting from the business done. These are ascertained and divided among the shareholders without any impairment of principal. The case is therefore within the rule laid down in Oliver's Appeal, and as to this item the decree of the court below is reversed.

The only other question relates to the premium at which the option to subscribe to the stock of the Jefferson and Clearfield railroad was sold.

Mr. Thomson was a holder of stock in the Bell's Gap Railroad Company. This company owned a short line of road, tributary to the Pennsylvania Railroad, which was doing a prosperous business. It needed an extension reaching further into the coal fields of that region. The plan devised for securing it was to organize a new company, called the Jefferson and Clearfield Railroad Company, with a capital stock sufficient to build the road. Having done this the projectors mortgaged their unbuilt line for another sum sufficient to build it; and issued bonds bearing six per cent interest, and guaranteed by the Bell's Gap Company, for the amount secured by the mortgage.

These bonds the stockholders in the Bell's Gap Company were permitted to take at par in proportion to their holdings in that company, and the capital stock of the new company was thrown in as a bonus to those who subscribed for the bonds. This privilege to get a dollar in a guaranteed bond with a dollar in stock, for every dollar in money advanced, was a valuable one and sold for a premium. What is the character of this premium? It does not represent money earned by the Bell's Gap Railroad. It is not a profit or income growing out of the capital represented by Mr. Thomson's shares of stock in that road. It is rather an opportunity to invest money in a new enterprise which originated with the stockholders in the Bell's Gap Road, and which they limited to themselves. The whole arrangement was a gross violation of law, but it promised to bring gain to those who held the privilege of subscribing, and this promise or prospect was what gave value to the privilege. It was not money in hand but in the prospective, for if the new road could survive under its double load, the bondholders would have a good six per cent investment for

their money, and they would also have the value that the stock might reach without paying anything for it. This gain when realized by the subscribers to the bonds of the Clearfield and Jefferson road is not income from the stock of the Bell's Gap, nor is the price at which the prospect of realizing it was sold.

The decree of the court below should be modified so as to award the dividends from the Dennison Land Company to the life tenant. The other exceptions are dismissed.

## ROBERTS'S APPEAL.

OPINION BY MR. JUSTICE WILLIAMS, February 27, 1893:

This appeal is from the same decree just considered in the appeal of Lavinia F. Thomson. The questions raised are substantially covered by the opinion filed in that case, and for the reasons there given the decree of the court below is affirmed.