## Pardee's Estate.

Argued April 14, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

affirmed.

*Harold Evans,* with him *J. Gowen Roper,* for appellant.

*W. W. Montgomery, Jr.,* with him *Edward G. Tau-lane, Jr., Aaron S. Swartz, Jr., John M. Dettra* and *Montgomery & McCracken,* for appellee.

OPINION BY MR. JUSTICE PARKER, September 29, 1941:
This contest is between a life tenant and a remainder-man and the question, which arose on the audit of a trustees' account, is whether a certain portion of funds in the hands of trustees is principal or income. The particular items which raise the dispute are dividends aggregating $4,700 on 940 shares of Pardee Land Company, received by the trustees during 1937. The accountant treated one-half of the dividends as income and the other half as principal. The orphans' court held, in part, that all the dividends represented part of the net earnings of the corporation from its coal properties, that the corporation was a "wasting asset" corporation, and the items were therefore payable to the life tenant as income even though the intact value of the stock was reduced.

The remainderman appealed to the Superior Court and, the members of that court being equally divided, the case was certified to this court. We are all in accord with the result reached by the orphans' court. It becomes necessary to refer to the will of the testator and the organization, history, and practices of the Pardee Land Company.

Calvin Pardee, the testator, died March 18, 1923, leaving a will whereby he provided bountifully for his wife and his grandchildren and divided the residue of his estate into eight equal parts. Five of these parts were left in trust for five of his children for life with remainder to their respective descendants, if any, and if not per stirpes among his own descendants. The will provided that "all stock dividends or proceeds of sale of rights to subscribe for stock upon any stock" held by the trustees should be treated as principal and not as income. The present appeal involves the trust insofar as it concerns one of his sons, Alfred Day Pardee. By stipulation, this decision will govern the distribution to other beneficiaries in this trust and in other trusts. Among the assets of the trust in question are shares of capital stock of Pardee Land Company, which came from the testator through his executors.

Pardee Land Company was incorporated in 1914 under the laws of West Virginia with broad corporate powers and particularly with power to hold and lease coal, oil and gas lands, and the right to buy, sell and deal in oil, gas and other mineral lands, timber and timber products. At the time of testator's death in 1923 the company held approximately 25,000 acres of land, most of which was located in Logan and Boone Counties, West Virginia, and was leased to three operating coal companies. The royalties coming from the mining of coal on these lands constituted practically the entire income of the company until 1937. The mines were opened during the lifetime of the testator and have been continuously operated since that time.

In 1936, the corporation entered into an agreement with the Koppers Company to sell it or its nominee 4444.5 acres of undeveloped coal lands in Wyoming County, West Virginia, for the sum of $555,562.50, payable in five annual installments the first of which, in the sum of $100,000 with interest, fell due on July 9, 1937. The balance of the consideration was covered by four notes in the sum of $113,890.63, each payable with interest in one, two, three, and four years, secured by a purchase-money mortgage or a deed of trust. The initial payment was paid and accounted for. Conveyance was to be made to the Loup Creek Colliery Company. That tract of land was entirely separated from the leased lands, it had no railroad access, and it had never been developed except for unimportant timber operations. The company never sold any other land and never itself operated any mines. It made small and unimportant purchases of land to round out its holdings. Prior to 1937, the company paid dividends in varying amounts, dependent upon business conditions, particularly those existing in the coal industry.

During 1937 the corporation paid to the trustees four quarterly dividends at the rate of one and one-half per cent, or a total of $2,820, and what are described as extra dividends at the rate of ten per cent, or $4,700. It is a firmly established principle that ordinary dividends, in the absence of unusual circumstances, are to be regarded as income payable to the party entitled to receive them at the date of their declaration: *Nirdlinger's Estate (No. 1)*, 327 Pa. 160, 165, 193 A. 33. The "unusual circumstances" referred to are described in *Opperman's Estate (No. 1)*, 319 Pa. 455, 460, 179 A. 729. The appellant contends that there are here "unusual circumstances" shown by the financial history and corporate actions of the land company to which we will refer.

The Pardee Land Company was organized with a capital of $986,150, represented by 19,723 shares of the par value of $50 each and a paid-in surplus of approxi-

mately $1,027,000. The capital stock account has remained the same. On January 1, 1923, the paid-in and earned surplus was $993,141.33 and on the date of testator's death in March it amounted to $1,004,351.62 after an allowance for depletion. The corporation, largely for income tax purposes, adopted the plan of setting up a depletion account based on a fixed sum per ton of coal mined. The net returns from coal operations were credited to surplus and surplus was debited with the depletion reserve and dividends paid. Between January 1, 1923, and January 1, 1937, the net earnings, before depletion taken, exceeded the dividends paid by the sum of $203,668.90. It is also true that by charging depletion to surplus, the paid-in and earned surplus was reduced in the same period by $239,145.97. There were also additional earnings from coal operations in the year 1937. The total dividends paid during 1937 amounted to $157,-784, a sum considerably less than the balance of net earnings before depletion for the period from March 18, 1923, to December 31, 1937.

If further unusual circumstances are not present, it is clear under our decisions that the portion of these earnings paid out in dividends and reaching this trust belonged to the life tenant, Alfred Day Pardee. In *Knox's Estate,* 328 Pa. 177, 195 A. 28, we definitely decided that where a trust estate held stock in a "wasting asset" corporation, the withholding of reserve funds by the corporation did not alter the rights of the life tenant to the earnings when finally distributed. This was but a corollary to the rule of property that where an owner of land containing opened mines creates a legal life estate with the remainder over, the life beneficiary is entitled to retain for himself the net proceeds derived from the operations without making provision for a fund to offset depletion: *Neel v. Neel,* 19 Pa. 323; *Irwin v. Covode,* 24 Pa. 162; *Westmoreland Coal Co.'s Appeal,* 85 Pa. 344. We declined in the Knox case to follow the rule as stated in §239 of Restatement—Trusts.

Appellant also relies upon the circumstances that the corporation, in declaring a five per cent dividend on July 9, 1937, provided that payment was to be made from principal and, in declaring a dividend of four per cent on December 10, 1937, provided that payment should be "charged to paid-in surplus", and that the corporation sold the Wyoming County lands from which sale it received in the year 1937, $108,148.25, thereby making it expedient to pay the extra dividends. The appellant, assuming that of the $100,000 received, $61,671.23 represented a proper proportion of the profits on the sale to be allocated to the year 1937—the profit being considered as the amount by which the sale price exceeded the cost of the land to the corporation—contends that the entire $100,000 should be treated, nevertheless, as corpus on the ground that on the sale of the assets in the corpus of a trust all the proceeds are ordinarily considered principal. In support of that contention she cites *McKeown's Estate*, 263 Pa. 78, 82, 106 A. 189, and *Waterhouse's Estate*, 308 Pa. 422, 430, 162 A. 295. She also contends that the so-called extra dividends paid in 1937 were in fact a distribution of the proceeds of the sale of the Wyoming County land.

The appellee insists that the profit of $61,671.23 was income, predicating his position on the claim that the Pardee Land Company was authorized by its charter to buy and to sell land, that this was part of its business, and that the profits were earnings that might be distributed as dividends to the stockholders and when so paid should be treated as income payable to the life tenant. Appellee cites in support of this proposition *Oliver's Estate*, 136 Pa. 43, 20 A. 527, and *Thomson's Estate*, 153 Pa. 332, 26 A. 652. We do not consider it necessary or expedient to decide that question at this time. Even if we treat that profit as merely an increment in the corpus, it is apparent that the dividends must be paid to the life tenant rather than be added to the corpus.

At the outset it should be borne in mind that we are here adjusting the relative rights of life tenant and remainderman and not rights as between the corporate entity and the stockholders. While ordinarily the courts will follow the corporation's method in charging items as correct *(Neafie's Estate,* 325 Pa. 561, 568, 191 A. 56), and a trustee must examine the transactions with care to ascertain how they affect the rights of life tenant and remainderman, yet accounting practices must give way to actualities. It was for the corporation to determine what funds were essential to the carrying on of the business of the corporation and when dividends should be paid. It was for the trustee in the first instance and now for this court to determine how the dividends received should be distributed as between the life tenant and remainderman.

We cannot assent to the claim of the appellant that part of the dividends paid in 1937 are to be treated as a distribution of the capital assets of the Pardee Land Company to be placed in the corpus of the trust estate. In that year the corporation determined that it was in such a financial condition that a distribution could be made. It then had available for such distribution in the form of dividends the balance of its depletion account. The corporation, following its accounting methods, charged the dividends for 1937 as they had in the past to the surplus account, an account which included both paid-in and earned surplus. As a matter of fact, the surplus account at that time consisted solely of paid-in surplus as the earned surplus had been exhausted. If the corporation had not wished to maintain its depletion account for income tax purposes, the depletion account could have been written off or reduced so that there would have been sufficient in the surplus account to have paid the dividend out of earned surplus and to have left the paid-in surplus intact. We cannot allow the mere method of keeping the accounts to obscure the realities. The resolutions corresponded with the facts

in that the distribution reduced that portion of its capital accounts which was carried in surplus, but it did not change the capital stock proper or make any change in the structure of the corporation. It was but natural under the circumstances that the corporation should indicate that the surplus portion of the general capital accounts would be reduced.

Considering the relative rights of the life tenant and remainderman, we find that the reserves in the depletion account were for the benefit of the life tenant when the dividends were paid. They therefore now belong to the life tenant. The mere fact that the company was in funds by reason of the sale of the Wyoming County lands does not alter the situation, for those funds have not yet been tapped. This is the same situation that existed in *Knox's Estate,* supra. There the corporation sold part of its mining stock and there were funds in a depletion account available for distribution. We held that the dividends were to be treated as coming from undistributed earnings. Since the corporation was a "wasting asset" corporation, there was no illegal or improper reduction in the capital accounts.

Decree affirmed at the costs of the appellant.