## Mandeville's Estate.

*Trusts and trustees—Dividends — Extraordinary dividends — Principal or income—Corporations—Land companies—Decedents' estates—Distribution—Wills.*

1. Where extraordinary dividends, whether of cash, scrip or stock, are declared and paid on shares left by a decedent in trust, such allotments are to be distributed by adding to the corpus a sufficient portion to keep intact the value of the shares as they existed at the time the trust began, and dividing the remainder among those entitled to the income of the estate.

2. Where at the time an account is filed, the value of land companies' stocks left in trust has decreased from the inventory valuation, but extraordinary dividends have been paid from sales of lots, such dividends should be applied to make up the difference between the inventoried value of the stocks and their depreciated value at the time of the filing of the account, and the balance should be distributed as income.

Argued April 12, 1926.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER, and SCHAFFER, JJ.

Appeal, No. 154, Jan. T., 1926, by Ira J. Mandeville, a cestui que trust, from decree of O. C. Luzerne Co., No. 620, of 1914, dismissing exceptions to adjudication, in estate of Ira O. Mandeville.   Affirmed.

Execptions to adjudication.   Before HELLER, P. J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed.   Ira J. Mandeville, a cestui que trust, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Joseph F. Coll* and *Richard L. Bigelow*, for appellant. —This case is similar to Oliver's Est., 136 Pa. 43.

The inevitable inference from the will of testator in this case is that the life tenants should receive from the trustee, in so far as the stock of the land companies was concerned, just what testator received during his life time, to wit: "All that the land companies paid to him as dividends and used by him for his maintenance and support": Thompson's Est., 262 Pa. 278; Long's Est., 228 Pa. 594; Baughman's Est., 281 Pa. 23; Neel v. Neel, 19 Pa. 323.

No brief for appellee.

OPINION BY MR. JUSTICE FRAZER, May 10, 1926:

Ira O. Mandeville died September 7, 1914, leaving a will in which he devised his residuary estate in trust

to pay one-half the income to his son Ira and his wife for life with remainder to his grandchildren. At the time the estate was settled there remained a total sum of $15,437.03, consisting of cash and securities, which was turned over to the trustee. Among the securities were 201 shares of stock of the Firwood Land Company, inventoried at $25 a share, making a total of $5,025, and 50 shares of stock of the Forty Fort Land Company, inventoried at $50 a share, making a total of $3,000, or aggregating altogether $8,025. The trustee filed his account in 1924, showing he had received from time to time from the Firwood Land Company, on account of capital, payments amounting in all to $6,231, and from the Forty Fort Land Company $2,220. These amounts were both added to the principal; the inventory value of the stock, however was deducted from this amount, making a net increase in the principal of $426; the trustee accordingly held the stock as part of his principal account, without stated value, "subject to whatever dividend these companies may hereafter declare on their capital stock."

Ira J. Mandeville, a son of decedent and one of the life tenants, filed exceptions to the account, claiming all payments by the land companies on account of stock should have been distributed as income among the life tenants. The question is thus raised whether such dividends were income or principal. The court below held it to be the duty of the trustee to maintain the value of the trust property to the amount at the time received, and apply such portions of the dividends on account of capital as should be necessary for that purpose, and distribute the remainder as income. In this conclusion the court followed the general rule stated in many decisions of this court, and repeated in the recent opinion in Dickinson's Estate, 285 Pa. 449, 451, to the effect that where extraordinary dividends, whether of cash, scrip or stock, are declared and paid on shares left by a decedent in trust, such allotments are to be

distributed by adding to the corpus a sufficient portion to keep intact the value of the shares as they existed at the time the trust began, and dividing the remainder among those entitled to the income of the estate. See also McKeown's Est., 263 Pa. 78, 86, and Harkness's Est., 283 Pa. 464, 466. In McKeown's Estate, supra, in distinguishing between ordinary and extraordinary dividends, we said (page 86): "'An extraordinary corporate dividend is presumptively payable to the party entitled to the income at the time the dividend was declared; but this presumption must yield to proof of the fact, and if it appears that by such dividend the corporate assets are reduced below their value at the time the trust began, the principal must be made good before anything is awarded to income."

The assets of the land companies in question consisted of tracts of land plotted for building purposes, and their corporate business was disposing of lots, their profit being derived from the difference realized between the cost of the land and the selling price of the lots, less the expense of plotting and disposing of the property. Manifestly, as lots were sold from time to time, the assets of each company were consumed and decreased to a proportionate extent, and that, as time passed and other lots are disposed of, the day must finally arrive when the company will own no further property, and the stock become valueless. In the meantime, if the operations prove successful, the stockholders will have received as dividends, not only their profits but a return of their original investment in the stock. It was clearly improper, however, for the trustee to assume that because an amount equal to the appraised value of the stock had been received by way of dividends, the stock was without further value. This situation cannot be reached until the entire property is disposed of. As a matter of fact it was shown, without contradiction, that the value of the stock of the Firwood Land Company, at the time of filing this account, was $10 a share or a total

of $2,010, and that the value of the stock of the Forty Fort Land Company was $25 a share, making a total value of the shares of stock of both companies $3,510. To preserve the shares at the inventoried price at the time they were turned over to the trustee, there should be set aside on account of principal the difference between $3,510 and $8,025, or $4,515, and inasmuch as the total dividends paid aggregated $8,451, there remains the sum of $3,936 distributable as income.

The conclusion thus reached by the court below was in accord with the general rule applicable to such case.

The decree is affirmed at appellant's costs.