## Ormrod's Estate

*Harold A. Butz,* for accountant.

*Francis J. Gildner,* trustee and guardian ad litem for beneficiaries.

GEARHART, P. J., September 10, 1936.—John D. Ormrod died February 23, 1926, leaving a last will and testament dated January 7, 1926, which was duly probated March 1, 1926. By the terms of his will testator created certain trust estates, appointing the Lehigh Valley Trust Company trustee. The Lehigh Valley Trust Company has filed its accounts in the various trust estates. The one presently before us is the account of the trustee for Helen S. Ormrod.

After making certain specific bequests, testator placed the remainder of his estate in trust with the Lehigh Valley Trust Company. One third or three ninths thereof is to be invested and the income thereof paid to Helen S. Ormrod, his wife, during her widowhood, and in the event of her remarriage or death this share goes to testator's daughter Jeanne, or her heirs, and in the event of her death, then to his remaining children or their issue.

Helen S. Ormrod is living and unmarried. Jeanne is living and about 17 years of age.

The remainder of the residuary estate testator divides into three equal parts: Two ninths thereof is to be held in trust for testator's daughter Ruth M. Afflerbach, she to receive the income for life; another two ninths thereof is to be held in trust for testator's son, George H. Ormrod, he to receive the income thereof for life; and the other two ninths thereof is to be held in trust for testator's daughter Jeanne M. Ormrod, she to receive the income for life. The three children are living. After their death the principal of the trust goes to remaindermen.

The testator provides:

"The securities which I may own at my decease, are to be distributed as nearly as may be, among the several trusts . . . My Trustee shall have power to accept . . . and continue such investments in securities as I may own . . . with power . . . to convert the same."

The trustee received from the executors of the John D. Ormrod estate, into these trust estates, shares of stock in various corporations. Among these shares were 853 shares of Lehigh Portland Cement Company common stock, par value $50, allocated to the Helen S. Ormrod trust.

The account is filed by the trustee at this time in order that certain stock dividends declared by the Lehigh Portland Cement Company can be apportioned between principal and income. The question presented for adjudication in this account involves the same principles as in the trustee's accounts filed for Ruth M. Afflerbach, George H. Ormrod, and Jeanne M. Ormrod.

The facts, which are not in dispute, are as follows: At the death of testator the common shares of the Lehigh Portland Cement Company had an intact value of $102.07695 per share. Thus, the 853 shares in the Helen S. Ormrod trust had an aggregate intact value of $87,-071.63835. On December 27, 1927, the Lehigh Portland

Cement Company declared a 100 percent preferred stock dividend out of surplus, giving to every two shares of common stock, par value $50, one share of 7 percent cumulative preferred stock, par value $100. This brought into the trust estate of Helen S. Ormrod 426 shares of 7 percent cumulative preferred stock and $50 in cash.

At the time this preferred stock dividend was declared, namely, December 27, 1927, the intrinsic or book value of the common stock was $114.54 per share. The intact value on the total number of shares held in trust for Helen S. Ormrod, i. e., 853 shares, was $97,709.81. The increase, or the intact value from the date of death of John D. Ormrod at $87,071.63 to the date of the declaration of the stock dividend at $97,709.81, was therefore $10,638.17. This increase represents 106 shares of preferred stock, par value $100, plus $38.17 in cash.

Now the fact of the matter is that the trustee has at no time allocated the preferred stock dividend declared in 1927 between the remaindermen and the life beneficiary. The trustee now asks that the court determine the rights of the life beneficiary and the remaindermen to the 100 percent stock dividend declared by the company in 1927.

In Earp's Appeal, 28 Pa. 368 (1857), the rule as to the rights of remaindermen and life beneficiaries where stock was held in trust, providing for payment of income to a beneficiary with remainder over, and allocation of dividends between the two interests, was first definitely laid down. It was held in this case that the surplus fund accumulated by the company, over and above the current dividends, at the time of the death of testator, was a part of the principal of the fund, and that accumulations of the stock after the death of testator were a part of the income; that the value of the stock held by testator at the time of his death represented by an equal amount in value of new stock issued, is the principal, and remains subject to the trust; and the remainder, in the form of certificates of stock, is to be regarded as income.

The rule as enunciated in Earp's Appeal, supra, has been consistently followed since that time: Mandeville's Estate, 286 Pa. 368; Boyer's Appeal, 224 Pa. 144; Sloan's Estate, 258 Pa. 368; Dickinson's Estate, 285 Pa. 449; Harkness' Estate, 283 Pa. 464; Waterhouse's Estate, 308 Pa. 422. In Nirdlinger's Estate, 290 Pa. 457, the present Chief Justice, writing the opinion for the Supreme Court and speaking of the rule, said:

"Under the Pennsylvania or American Rule, adopted in most American jurisdictions, the rights of the life tenant and the remainderman to an extraordinary cash or a stock dividend declared during the life tenancy are determined by a division of the dividend between the claimants so as to preserve intact the book value of the devised property (the corpus) as it existed at testator's death. This was made clear by the decision in Earp's App., 28 Pa. 368, long recognized as a leading authority. The effect of the rule is to give to the life tenant the income which has been earned since the trust came into being, but, at the same time, to preserve the value of the corpus as it was at the date of the death of the testator, or, to use a more convenient term, to preserve the intact value of the estate."

Applying this rule to the 1927 stock dividend, it appears that the book value of the shares of stock held in this estate increased in the amount of $10,638.17 from the death of testator to the date of the declared stock dividend. This is the equivalent of 106 shares of preferred stock, par value $100, plus $38.17 cash, and under the principles above quoted belongs to the life tenant, as it represents income earned. The fact that it was not allocated to income in 1927 does not prevent us from now adjusting the matter. Accordingly, the life tenant is awarded the 106 shares of preferred stock, plus $38.17: Bullitt's Estate, 308 Pa. 413.

Following the declaration of the stock dividend in 1927, up to the time of the modification and change in the stock

structure by the company (and which brings us to the second question, to be discussed hereafter), the corpus of the estate with respect to the Lehigh Portland Cement Company stocks consisted of the original 853 shares of common stock, par $50, and the 320 shares of the preferred, par $100, plus $11.83 in cash, received in 1927.

The second question that presents itself comes about by a modification and change of the capital structure of the company. On March 18, 1936, after due notice to the stockholders, a meeting was held, and the modification plan of the capital structure of the company was duly approved. The terms of the modification provided that for each share of the old common stock, par value $50 per share, there would be issued in substitution one share of new common stock of the par value of $25 per share, and for all rights accruing and dividends due to April 1, 1936, on the old 7 percent cumulative preferred stock of the par value of $100 per share, which was callable at $110 per share, there would be issued to the preferred stockholders the following: One share of new 4 percent cumulative convertible preferred stock, par value $100, callable at $110 per share; one half of one share of the new common stock, par value $25 per share, and cash in the sum of $12.50 per share.

By reason of the change and modification in the capital structure of the company, the trustee has received new certificates of preferred and common stock in exchange for the old preferred and common stock, share for share, and additional shares of new common stock on the basis above recited, plus $12.50 in cash on each share of old preferred stock. The question for solution is whether the new common stock and cash received is distributable as income or corpus, or must it be apportioned.

On April 1, 1936, there were accrued dividends of $13.12½ due on each share of the old 7 percent cumulative preferred stock. It should be stated that there is no direct declaration or resolution adopted by the company to the

effect that the accrued dividend is to be paid or satisfied out of the one-half share of new common stock and $12.50 in cash accompanying each share of preferred stock. This offer, it would seem, was given in consideration of, or as an inducement to the preferred shareholder to convert his old preferred stock, with the accrued dividends due thereon, for a share of new preferred stock of a like par value of $100, and a like call value at $110.

The effect of the modification of the corporate structure was to permit the sum of $11,258,700, i. e., 50 percent of the par value of the outstanding common stock, to be transferred to the capital surplus account. It was from this fund that the additional new shares of common stock and the payment of $12.50 per share were made. It was a surplus created by action of the stockholders out of capital.

The act of the stockholders in reducing the par value of the common shares of stock so as to produce a surplus is an administrative act of the corporation and is an unusual circumstance when related to dividends which require apportionment based on the intact value of the shares of stock as they existed at the death of testator and as they existed at the time of the unusual circumstance: Opperman's Estate (No. 1), 319 Pa. 455, 462.

Immediately following the corporate modification we find that the book value of the preferred stock was $100 per share, and the new common stock $41.80 per share. For the purpose of showing that the aggregate intact value of the shares of stock in this estate decreased after the modification, the following summary is here set forth:

1926  853 shs. common stock received from John D. Ormrod
estate, intact value $102.076 per share........ $87,071.63

1927  853 shs. common, intact value $64.548 plus per share. $55,059.80
320 shs. preferred, par value $100 per share......... 32,000.00
Cash ....................................... 11.83

Total after declaration of 100 percent preferred
stock dividend .......................... $87,071.63

1936 853 shs. new common, intact value $41.800557 per share .................................... $35,655.87

320 shs. new preferred, par value $100 per share..... 32,000.00

160 shs. new common, par $25, intact value $41.800557 per share ................................ 6,688.09

Cash with preferred shares........................ 4,000.00

Cash at time of preferred dividend................. 11.83

Total after modification set-up of April 1, 1936....... $78,355.79

Loss on intact value on April 1, 1936............... $ 8,715.84

It will thus be seen that on April 1, 1936, the stock held by this estate, plus the cash received under the modification effected, is $8,715.84 less than the value of the original shares of stock at the death of testator. We are here dealing with an extraordinary dividend in the sense that it is brought about by the modification of the corporate structure. Under the rule laid down in Earp's Appeal, supra, and the cases hereinbefore cited, the rights of the life tenant and the remainderman are determined by a division of the dividend between claimants so as to preserve intact the book value of the devised property (the corpus) as it existed at testator's death. Here, if the entire dividend is awarded to the corpus, it will still be less than the intact value established at the death of testator. It seems plain, then, that the entire dividend should be awarded to corpus.

In addition, it must be constantly borne in mind that the dividend was not paid out of earnings or accumulated surplus, but from surplus created out of the corporate capital. In Opperman's Estate (No. 1), 319 Pa. 455, 460, Chief Justice Kephart, writing the opinion of the court, said:

"From the record we find that dividends were declared and paid from a surplus brought about by a reduction in capital stock. The distribution of this fund to sharehold-

ers by dividend was a return of contributed capital by corporate action. It was an unusual circumstance, and having been paid as a dividend its allocation to corpus was beyond question. . . . . .

"There is, however, a distinction between earned surplus and contributed capital. Contributed capital is neither earnings nor increment, nor may it be included in 'income' when that term is used in a will and, if paid by way of dividends, current or otherwise, it belongs to corpus . . .

"The act of the corporate directors in reducing the number of shares of stock so as to produce a surplus would be an administrative act of the corporation and is an unusual circumstance when related to dividends. The fund produced from such procedure remains contributed capital and not earnings."

See also 11 Fletcher Cyclopedia Corporations 863; McKeown's Estate, 263 Pa. 78, 84; Chauncey's Estate, 303 Pa. 441, 447; Dickinson's Estate, 285 Pa. 449, 453.

The fact that at the time of the modification of the corporate set-up there were accrued dividends due on the preferred stock does not alter the situation. It is well settled that shareholders are entitled to dividends only when there are surplus profits or net earnings out of which dividends may lawfully be paid, as in the case of common stockholders: Given's Estate, 323 Pa. 456; Warren v. Queen & Co., 240 Pa. 154; Fidelity Trust Co. v. Lehigh Valley R. R. Co., 215 Pa. 610.

A surplus of capital resulting from the reduction of the capital stock does not represent surplus profits, and preferred stockholders cannot have it applied to the payment of arrears of dividends on their stock: 12 Fletcher Cyclopedia Corporations 194; A. L. I. Restatement of Trusts, sec. 236 (f).

And now, September 10, 1936, the within account is confirmed except as it applies to the distribution state-

ment with respect to the stock of the Lehigh Portland Cement Company. The accountant is directed to prepare a new schedule of distribution in accordance with the ruling made in the body of the adjudication, and submit the same to the court for approval. This decree to become absolute unless exceptions are filed within 10 days herefrom.