## Opperman's Estate (No. 1).

456

Argued September 28, 1934; reargued April 29, 1935. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*James B. Sayers,* for appellants.

*George Wharton Pepper,* with him *Barnes, Biddle & Myers, Morgan, Lewis & Bockius, Saul, Ewing, Remick & Saul* and *Evans, Bayard & Frick,* for intervening appellants.

*Robert L. Kirkpatrick,* with him *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE KEPHART, June 29, 1935:

Testator died February 12, 1930, owning 6,000 shares out of 15,000 of the capital stock of the William Schuette Company. By his will he gave to his widow, Clara A. Opperman, one of the appellants, three-tenths of his residuary estate absolutely. He gave another three-tenths thereof to the Union Trust Company of Pittsburgh, trustee, charged with the duty of paying "the income arising therefrom in quarterly installments to [his] wife, Clara A. Opperman, for and during the term of her natural life," she to "have the right and power to devise and bequeath the principal of said trust fund and any additions thereto, in such manner as she may deem proper, it being [his] hope, however, that she will devise and bequeath said trust fund to [his] daughter, Marie Florence Opperman, in trust, and under substantially the same terms as the trust fund created by this paragraph." To his daughter, Marie Florence Opperman, he gave two-tenths of his residuary estate absolutely, and to the same trust company another two-tenths thereof, charged with

a like duty to pay "the income arising therefrom in quarterly installments to [his] daughter Marie Florence Opperman, for and during the term of her natural life," his daughter "to have the right and power to devise and bequeath the principal of said trust fund and any additions thereto in such manner as she may deem proper." No gift over is specified in case the widow or daughter should fail to appoint the remainder estates.

Much the larger part of testator's estate at the time of his death consisted of his above-mentioned capital stock in the William Schuette Company, the value of which, because of accumulated surplus, was in excess of the par value of the shares. The stock, at its enhanced value by reason of the accumulated surplus, passed to the executors on the probate of testator's will, but in trust for those entitled thereto at the time of and as of the date of his death; that is to say, as of that date the widow became entitled absolutely to three-tenths of that stock, the daughter became entitled absolutely to two-tenths thereof, and the Union Trust Company of Pittsburgh, trustee, to five-tenths thereof, three-tenths thereof in trust for the widow for life with remainder to her appointee, if any, and two-tenths thereof in trust for the daughter for life with remainder to her appointee, if any.

The question first presented is whether the court below was correct in apportioning the ordinary dividends of the William Schuette Company stock declared after testator's death. It was there apportioned so as to keep the intact value of the stock the same as it was at the time of testator's death, distributing to corpus that part of the dividend declared from earnings accumulated prior to testator's death and held in surplus.

This case is merely an evidence of the interminable struggle between life tenants and remaindermen, intact value and income, the primary objects of testator's bounty and those of remoter interest. Judicial opinion may cause the struggle to hesitate, but, as long as trusts

continue, these quarrels will not end. The legal mind striking at an expression here and there in judicial decisions will find some new phase to perplex and disturb. We thought that Waterhouse's Est., 308 Pa. 422, would put an end to our difficulties; but such a result was more expectation than realization, for we now have Opperman's Estate cited contrary to what we thought was a comprehensive statement of the rule as to disposition of ordinary dividends. We stated in Waterhouse's Est., supra, that ordinary cash or scrip dividends belong to life tenants regardless of how soon after testator's death they are declared by the company whose stock is held in corpus. They are not, in the absence of unusual circumstances, apportionable between life tenants and remaindermen. The reason for the rule, found in the earlier cases, is apparent.

In determining the relative rights of life tenants and remaindermen we will, wherever possible, protect with jealous care the interests of the widow and children who are usually made the primary objects of testator's bounty. No sharp lines should be drawn in protecting those interests, though the testator may, by his will, put it out of the power of courts to promote this just end. But such interdiction must come from and be expressed in clear, positive language. It is not our purpose to review the authorities.

The court below held that if an ordinary dividend reduced the "intact value" of the corpus it was such an "unusual circumstance" as called for apportionment of that dividend. Waterhouse's Est., supra, did not so state the rule. The rule as announced by the court below would impose an undue burden on fiduciaries. The testator has given to the life tenant all the "income" from the trust estate. Income includes ordinary dividends and dividends are usually the product of earnings in some form. But, the court below said: "All dividends have not been declared out of earnings" and ". . . if the trustee could permit this decrease in cap-

460

ital assets [by paying out of surplus earned or capital contributed prior to testator's death] it would be only a short time until they would all be consumed and paid out to the life tenants with nothing left for the remaindermen. This is not what Mr. Opperman intended by his will. He said that the income should be paid to his wife and children and this limitation precludes the possibility of paying out any portion of the capital." By failing properly to appraise the relative rights of the contending parties with the intent and purpose of the testator superimposed thereon, the court below strikes at the heart of the trust and destroys the protection intended for the wife and children.

The "unusual circumstance" was created by the court below in deciding that, in the administration of the trust, the fiduciary must, under all conditions, preserve "intact value" in an inviolate position even to the absorption of ordinary dividends; by so holding it neglected to consider that when that "conclusion" or requirement collided with testator's intent that this income, without suggestion as to whence it came so long as it was dividend income, was to go to his wife and children, the former must give way to the latter. The rule applicable to extraordinary dividends cannot be applied to ordinary dividends, nor may an "unusual circumstance" requiring apportionment be predicated on the relation between the value of testator's holdings of a particular stock and the value of his whole estate. An unusual circumstance is not one set up by the fiduciary or the court, but comes from some administrative or corporate act within the corporation or some break down within the corporate structure, as will be discussed later.

From the record we find that dividends were declared and paid from a surplus brought about by a reduction in capital stock. The distribution of this fund to shareholders by dividend was a return of contributed capital by corporate action. It was an unusual circumstance, and having been paid as a dividend its allocation to cor-

pus was beyond question. Second, dividends were paid partly from this capital-created surplus coming from the reduction of capital as above, and partly from earnings; all of that dividend attributable to a reduction of capital goes to corpus, and, of course, that paid from earnings goes to the life tenants. Third, there is no dispute that dividends declared from earnings of the corporation since testator's death go to the life tenants.

Fourth, dividends were declared and paid partly out of corporate earnings accumulated before testator's death, and partly out of earnings since that date; the court below apportioned to corpus as much of those dividends as were attributable to corporate earnings before testator's death. The court was in error in so doing; as stated, there were no "unusual circumstances" calling for the apportionment of these dividends. Testator directed the income from the trust to go to the life tenants, his wife and children. They were the chief objects of his bounty. The income from the stock in the trust related to the income the testator generally received from it. He drew no sharp line as to whether that income came from earnings or a surplus created before or after his death. The surplus from which this dividend was paid represented earnings. In considering "intact value" and testator's dominant purpose that his widow and children should receive this income, it is immaterial whether the earnings from which it came were made before or after testator's death if they were paid out in dividends regularly declared at uniform intervals and rates theretofore or customarily used. Otherwise the widow and her children would be deprived of the sustenance of life if this was all of her estate. Such "income" is very much like interest on a bond and testator did not intend that the principal and primary objects of his bounty should be deprived of it merely because it was not currently earned but paid out of a reserve of earnings. Corporations do not make a practice of distributing all current earnings as dividends; surpluses are

462

built therefrom to be drawn on in years of corporate famine when current earnings are not sufficient to meet dividend requirements. As stated by Mr. Justice SIMPSON in McKeown's Est., 263 Pa. 78, the law recognizes that those matters balance themselves in the long run, and so, in ordinary dividend cases, adopts the act of the corporation in declaring the dividend as the only practical test. We have, in all our cases, held that such dividends must go to life tenants. Income in a trust such as this must receive an assured scope and meaning. Persons who write wills must know whereof they speak. Courts must not whittle the definition and restrict income until the life tenants are pauperized. It has not nor can it be subjected to the test announced by the court below.

There is, however, a distinction between earned surplus and contributed capital. Contributed capital is neither earnings nor increment, nor may it be included in "income" when that term is used in a will and, if paid by way of dividends, current or otherwise, it belongs to corpus; if the ordinary dividend as above described is made up of earned surplus no matter what its ramifications may be, it follows the rule announced in Waterhouse's Est., supra, and goes to life tenants.

The act of the corporate directors in reducing the number of shares of stock so as to produce a surplus would be an administrative act of the corporation and is an unusual circumstance when related to dividends. The fund produced from such procedure remains contributed capital and not earnings. Earned surplus of course stands on a different basis, it is the product of earnings, the fruits of contributed capital.

But, it is urged that corporate trustees should be freed from responsibility in respect to dividends of whatever nature unless the remaindermen give notice that the dividend is an unusual one or unless the dividend payment has written on its face that fact. It is urged that as these corporate trustees do an unusually large busi-

ness it, in effect, should not be required to be careful. These trust companies as fiduciaries cannot expect the court to act as their guardian or supervising trustee to protect or advise them what should be done under circumstances such as discussed.

Their powers as fiduciary, for which they are compensated, contemplate duties that must be performed. They must assume a fair part of the responsibilities incident thereto and not place all responsibility on the life tenants or the remaindermen. They will not be permitted to rest content in the assurance that they have employed some person to function as trust officer, when that person makes a mistake.

It is well known that when the contributed capital structure is either increased or diminished, the holders of the stock, these fiduciaries, receive notice of such reduction or increase. These trust officers cannot summarily throw aside the notice and then assert they had no knowledge of the transaction. The large business entrusted to their keeping as fiduciaries requires of them utmost care. On the other hand, a corporation paying dividends will not be permitted to disguise its activities so that the parties who receive them are in ignorance from whence they come. Ordinarily in distributions of contributed capital as dividends, the title holder knows of the corporations activities, and when it receives a dividend the paying corporation should in some way notify it that it is from contributed capital; but, if it does not, and the holder has received the notice which all stockholders receive, it will be affected with that notice in allotting the dividend. This duty is owed to the public at large as customers.

What we hold is: that where an ordinary dividend is received which expresses on its face that it is from contributed capital, or which, from prior notice received from the company, the fiduciary should know is from contributed capital, the fiduciary will be held to accountability for the disposition of that dividend to corpus.

We repeat the rule stated in Waterhouse's Est., supra, that ordinary cash or scrip dividends belong to life tenants regardless of how soon after testator's death they are declared by the company whose stock is held in the corpus. They are not, in the absence of unusual circumstances, apportionable between life tenants and remaindermen. Where dividends are regularly declared, at uniform intervals and rates they belong to the life tenant unless the fiduciary is notified in some way that the dividends are from contributed capital. Earnings from which dividends may be paid include those in "surplus," they comprehend earnings whether current or past, whether in a surplus account or not, where the dividends are uniform and regularly declared and at the usual or customary rate. Dividends from earnings since testator's death go to life tenants without regard to amount or regularity of declaration.

One further question remains. On January 24, 1930, during the lifetime of testator, the corporation adopted the following resolution: "On motion duly seconded and carried, it was decided to declare a dividend of $90,000 payable quarterly as follows: March 10th, June 10th, Sept. 10th, Dec. 10th." On testator's shares of the capital stock, he became entitled to $36,000 of this dividend, payable $9,000 on each of the four dates stated in the resolution. Had the resolution declared, as is not uncommon, that the dividend should be paid to the owners of the capital stock on the dates mentioned, testator would not have become a creditor of the corporation when the dividend was declared; who would be its creditors would only be known when the date of payment arrived, and they would be the owners of the shares at that date. But the dividends having, by the resolution above quoted, been declared generally, during his lifetime, though not payable until a later date, they "form part of the corpus of the estate and go to the executor": Corgan v. George F. Lee Coal Co., 218 Pa. 386, 391; 14 C. J. 817, 818; Sherman v. Riley, 43 R. I. 202; 2

Clark & Marshall on Private Corporations, page 1613; 7 R. C. L., section 267; United States v. Guinsburg, 278 Fed. 363. In a note in 60 A. L. R. 703, the cases on the point are collected, and it is said:

"It is settled by a long line of authorities that the date on which a cash dividend is declared governs, and, unless by the terms on which it is declared it is payable to stockholders of record on a specified date, it belongs to the owner of the stock at the time declared, although it may be payable at a future time. Hence, in the absence of contract provisions to the contrary, a sale of stock after the dividend has been declared carries no right to the dividend to the purchaser." Hence appellants here can have no right to any part of this chose in action belonging to testator by reason of the fact that they were later given an undivided interest in the stock. The court below was right, therefore, in deciding that those four dividends, when and as received, were properly placed in the corpus of the trust.

Section 22 of the Fiduciary Act of 1917, P. L. 447, has no application to the dividends here involved. We follow the late Judge GEST's opinion in Thompson's Est., 6 D. & C. 503, where he held that this act provided only for the apportionment of regular dividends between successive life tenants on a per diem basis as bond interest is apportioned. We can scarcely see how this act would apply to the apportionment of dividends with relation to the date of the death of the testator.

Decree reversed, the costs to be paid by the estate.

Mr. Justice SIMPSON dissents.