## Given's Estate.

Argued April 9, 1936; reargued April 27, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*M. W. Acheson, Jr.,* of *Sterrett, Acheson & Jones,* for appellants.

*John G. Frazer,* with him *Robert L. Kirkpatrick, F. T. Ikeler* and *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 26, 1936:

The testator, Thomas Hartley Given, died June 19, 1919. His will of October, 1918, gave his estate in trust to his executors, directing that "They shall pay the net income derived therefrom, after the payment and deduction of all taxes, premiums of insurance, expenses and other charges of every nature, to my Sister, Annie Given Kerr, quarterly, during her life, without being subject to her debts, engagements or liabilities, but freed and discharged therefrom, and without the right of anticipation, and upon her death, my executors shall convert said estate into cash, at such times, for such prices and upon such terms as to them shall seem proper, and divide the proceeds derived from the conversion thereof, and the income which may accrue upon said trust estate from the time of her decease, as follows: (a) To the payment of all charges and expenses incurred by them in the execution of this trust." Six-tenths of the remainder was then given to Arthur E. Braun and four-tenths to George C. Moore. The gross estate was over $7,000,000. Mrs. Kerr, the life tenant, died December 6, 1934, and in her will named the Union Trust Company and James R. Sterrett of Pittsburgh executors. After her death the following semiannual dividends were declared on stocks held by the estate: A dividend of $1,250 was declared on December 27, 1934, to the Monongahela Light & Power Company stockholders of record on December 20, 1934; a dividend of $11,250 was declared payable to the Monongahela Street Railway Company stockholders of record on the same dates and terms as the foregoing dividend; a dividend of $1,000 was de-

clared on January 4, 1935, to stockholders of the Suburban Rapid Transit Street Railway Company, payable on the same date. There was another dividend in the amount of $216,562.50 on the "A" preferred stock of the Radio Corporation of America, consisting of cumulative and unpaid dividends, payable quarterly, for the period April 1, 1932, to December 31, 1934, which was declared on January 18, 1935, payable on February 19, 1935.

The executors of Mrs. Kerr claimed these dividends under section 22 of the Fiduciaries Act of June 7, 1917, P. L. 447, which provides: ". . . *all payments of . . . income, . . . or dividends . . . directed by any will to be made during the lifetime of the beneficiary . . . shall like interest on money lent, be considered as accruing from day to day* and *shall be apportioned to the date of the death of such beneficiary."* The court below denied the claim, holding that the testator's will controlled the disposition of the income, and that the act of assembly did not apply, since the terms of the will indicated he did not intend Mrs. Kerr's estate to receive any dividends declared after her death.

The question presented by this case is whether the undistributed earnings of the corporations declared as dividends after the life tenant's death are income or dividends during life tenancy within the meaning of the Fiduciaries Act, so that they are to be considered as accruing from day to day like interest on money lent and apportionable as such. The well established principle with respect to dividends is: "It is the declaration of the dividend which creates both the dividend itself and the right of the stockholder to demand and receive it": *Fletcher on Private Corporations (Permanent edition),* section 5321; *Opperman's Est.,* 319 Pa. 455, 464, 465.

At common law dividends regularly declared were not apportionable: *McKeen's App.,* 42 Pa. 479; much less were expected or anticipated dividends subject to apportionment. Rents were apportionable in Pennsylvania

under the Act of April 8, 1833, P. L. 249, as was interest on municipal bonds or bonds of private corporations: *Wilson's App.,* 108 Pa. 344. As to dividends, however, our cases recognized the common law rule. All attempts to make dividends apportionable were unsuccessful. To relieve estates of what would seem to be a harsh rule, the above section of the Fiduciaries Act was adopted. The act states that all payments of income and dividends directed to be made during the lifetime of a beneficiary shall, like interest on money lent, be considered as accruing from day to day and shall be apportioned to the date of death of such beneficiary.

In *Waterhouse's Est.,* 308 Pa. 422, we held that regular dividends declared during the life tenancy belonged to the life tenant regardless of the time during which they were earned. On the basis of this and other cases we decided in *Opperman's Est.,* supra, where the testator died in February, 1930, that a dividend of $90,000 declared in January, 1930, which was prior to his death, but made payable quarterly in March, June, September and December of that year, belonged to corpus and was not income, because being dividends declared during testator's lifetime, though payable thereafter, they were properly part of the estate left by him. If a literal construction of the act *covers all payments of income or dividends during the period of life tenancy,* our decision that the date of declaration controlled was erroneous. By such declaration the relation of debtor and creditor is created between the corporation and the holder of the shares of stock. If the act changes the law with respect to a dividend declaration and has the effect of transferring a portion of the title to the chose in action to the trust estate, making the time of payment material in all cases, then these dividends, at least in part, belonged to the life tenant. Our holding in *Opperman's Est.,* supra, followed the universal rule that the date of the declaration fixed the status of the parties in relation to the dividend, and established that the Act of 1917 had no appli-

cation. ·This was in accordance with·the rule that corporations can only declare dividends from earnings, which must be present when the dividend is declared. They cannot be declared in anticipation of earnings. When declared, they are set apart from corporate earnings and the relation of debtor and creditor is created. There is considerable merit in holding steadfast to the rule that the date of declaration of the dividend fixes the rights of the parties. While the legislature certainly had some purpose in mind which it wished to accomplish by the act, it could not have intended to bring about unusual or impracticable results based on a conception of dividends which has no reasonable existence in fact,* nor to override the intention expressed in a will. Where dividends *are regularly declared at uniform intervals and have been paid for years on that basis,* there is more reason to imply in law that the earnings accrue daily as interest on money lent and this furnishes a basis to sustain what might otherwise be considered as a legislative assertion of a fact not in existence. The operation of the Act should be limited to such dividends. However, as there are other·considerations in connection with this case requiring discussion, we do not decide the instant case on any interpretation of the act, but solely on testator's intention as expressed in his will.

It is conceded that the act sets up a rule of construction of wills and is not the statement of a rule of law. If the intention of the testator is clear from the will, then no rules of construction are necessary to determine what should be done with the income: *Bumm's Est.,* 306 Pa. 269; *Boyer v. Campbell,* 312 Pa. 460. We are at lib-

---

* This is illustrated in a case decided this day involving the declaration of a dividend. The corporation had adopted a dividend policy of declaring approximately half its net earnings in dividends. A loss was sustained in the years 1932 and 1933, while in 1934 a profit was made. The corporation then declared a dividend of approximately one-half the profits of 1934, less the losses of 1932 and 1933: *Jones v. Motor Sales Co. of Johnstown.*

erty to adopt testator's intention notwithstanding a statute may adopt a contrary rule of construction.

It will be observed here that testator, by his will, did not direct the payment of dividends as such. He directed the trustees to pay the "net income derived therefrom," that is, the earnings from the trust estate as a whole. The income was to be paid as it came in, not before. Income has been defined "as the gain derived from capital, from labor or from both combined": *Eisner v. Macomber*, 252 U. S. 189. Our opinions have likewise defined it. In *Opperman's Est.*, supra, page 461, we said, "The testator had given to the life tenant all the income from the trust estate. Income includes ordinary dividends and dividends are usually the product of earnings in some form." Dividends, therefore, are not income until they are received; to be income they must come in: *Trust Co. v. Rose*, 25 Fed. (2d) 997. The payment of dividends declared and paid after Mrs. Kerr's death was not income "derived" from the trust during the life tenancy. They were not separated from the mass of corporate property by the corporation until after her death, nor were they received by the trust estate during her lifetime. They were not "derived" as income in fact during her lifetime, nor could they under this will be considered as income in law. They did not become due and payable until after Mrs. Kerr's death.

Appellants urge that the dividends accrued in part as income during the life tenancy; that is, undistributed earnings during the life tenancy may be regarded as dividends; and further they may be considered as net income accruing from the estate which is due the life tenant regardless of time of declaration or payment. The will provides otherwise and directs such income or dividends to be paid the remaindermen. It stipulates that upon the death of the life tenant the estate shall be converted into cash, and the proceeds *"derived"* therefrom and *"the income that may accrue upon said trust estate from the time of her decease"* shall be divided among the

remaindermen. It is argued that the court below awarded to the remaindermen not only the portion of this income that accrued from the time of the life-tenant's death as the will directs, but also that portion that accrued up to that time, notwithstanding the statute says "all payments" shall be considered as accruing from day to day and shall be apportioned as "interest on money lent."

The argument does not take into consideration what testator directed to be done. He gave to life tenant all income "derived" from the estate during her life, and to the remaindermen the income accruing after her death. Once the income was paid into the estate, the gross amount was then subject to the payment of all charges and expenses incurred in the administration of the trust. Certainly no income could be "derived" from the estate until received by the trustees, nor could income accrue to the remainder until it was due and payable or received. The words "derived" and "accrued" are used in the will in the same sense—they both apply only where the dividends have actually been paid or declared. He knew what the words "derived therefrom" meant. He used them in disposing of the estate after his sister's death when he directed his estate to be reduced to cash and the proceeds "derived" (received) to be divided. The word "accrue" in the will was used in connection with the remaindermen. The testator was not interested in Mrs. Kerr's heirs or legatees, for he provides that on her death the executors shall convert the estate into cash and divide the proceeds "and the income which may accrue upon said trust estate from the time of her decease" between the remaindermen named. Having provided for Mrs. Kerr for life, he wanted the remaindermen to have all the trust estate, both principal and income, as of the date of her death. Mrs. Kerr's rights and those of her estate ended when she died. The testator said that the "income derived" from the estate during her life should be paid to her, and that "upon her

death" the executors should convert the estate and divide the proceeds together with "the income which may accrue upon said trust estate from the time of her decease" between the remaindermen. The testator did not use the word "accrue" in connection with income prior to Mrs. Kerr's death. He did not say that accrued income "earned during her lifetime" was to be paid to her. He used the word "derived," which means received or in a position to be received. To hold otherwise would ignore his purpose. We have defined the word "accrue" to mean to become due and payable. A tax accrues when it becomes due: *U. S. v. Woodward*, 256 U. S. 632. A cause of action accrues when suit may be commenced on it: *Amy v. Dubuque*, 98 U. S. 470; to accrue is to come by way of increase, to be added as an increase: *Mifflin's Est.*, 232 Pa. 25, 29. In *Braddee v. Wiley*, 10 Watts 362, we defined the word "accrue" as meaning "becoming due and payable." The question there before the court was the apportionment of rent which became due after a sheriff's sale. The Act of April 6, 1802, used the words "due subsequently" and the Act of June 16, 1836, used the words "rents or sums accruing subsequently," and in the course of the opinion it is stated, "If use and authority have anything to do with the construction of words, I know of no other definition of 'accruing' as here used than 'becoming due and payable.' " Other jurisdictions have likewise interpreted this word: *New Order B. & L. Assn. v. 222 Chancellor Ave., Inc.*, 149 Atlantic 525; *Fay v. Halloran*, 35 Barb. N. Y. 295. The words "the income which may accrue upon said trust estate from the time of her decease" as appears in the will carries no greater significance than the word "accrue" imports.

The case cited by appellants, *Gross v. Partenheimer*, 159 Pa. 556, relates to interest payments which have always been construed differently. See *Wilson's App.*, supra.

Decree affirmed at cost of appellants.