## Nirdlinger's Estate (No. 1).

Argued May 18, 1937.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Maurice Bower Saul,* with him *R. M. Remick,* of *Saul, Ewing, Remick & Saul, William White, Elmer A. Schroeder* and *William A. Gray,* for appellants.

*Joseph M. Leib,* with him *John J. McDevitt, 3d,* and *John J. McDevitt, Jr.,* for appellees.

*Ella Graubart,* with her *Charles F. C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn,* and *Julian Miller,* for amicus curiæ.

OPINION BY MR. CHIEF JUSTICE KEPHART, July 7, 1937:

This case involves a dispute over the right of apportionment of a cash dividend between successive life tenants.   Samuel F. Nirdlinger died testate on November 13, 1918.   His will created a trust in the residue of his

estate with directions to the trustees to pay to each of several life tenants a specific percentage of "the net rents, issues, interest, income, dividends and revenues"; one being his son, Frederick G. Nixon-Nirdlinger, who was awarded twenty-nine per cent. Frederick died on March 11, 1931, and, under the terms of the will, his share of the net income is now payable to testator's two grandchildren, Samuel F. E. Nirdlinger and J. F. Z. Nirdlinger, in addition to their original share of thirty-three per cent.

The Nirdlinger estate owned one-fourth (750 shares) of the capital stock of the Klaw and Erlanger New Orleans Theatre, upon which ten dividend payments in varying amounts were made at irregular intervals from 1919 to 1929 inclusive. None of these dividends impaired the intact value of the stock, and they were all distributed as income. No dividends were declared in 1930 and 1931, during which years operations of the corporation showed a loss; and on March 30, 1932, a dividend of $25,000 payable to the Nirdlinger Estate was declared. This dividend was entirely out of earnings which had accrued prior to Frederick's death.

The auditing judge awarded 29% of this dividend to testator's grandchildren as directed by will on Frederick's death, on the theory that it was an ordinary dividend paid out of current earnings and not apportionable. The court en banc affirmed this award, holding that it was neither an extraordinary dividend nor apportionable as such, but was an irregular one not subject to apportionment under Section 22 of the Fiduciaries Act of June 7, 1917, P. L. 447.

The executors of the estate of the deceased life tenant contend that the irregular nature of the dividend requires an application of the equitable rules of apportionment governing extraordinary dividends, in which event they would be entitled to the entire dividend, since admittedly it was paid out of earnings which accrued during his lifetime. It is argued, in the alternative, that the

dividend comes within the purview of Section 22 of the Fiduciaries Act, supra, and by virtue of apportionment under the Act the deceased life tenant's estate would receive most of it.

We discussed in *Neafie's Estate*, 325 Pa. 561, the question of apportionment between successive life tenants and pointed out that the apportionment to be made in such cases must be largely governed by the particular facts presented; this court will not interfere with the conclusion of the court below in absence of an abuse of its discretionary power. Therefore it remains to be determined whether the action of the court below in refusing apportionment of the cash dividend under the rules laid down by this court or Section 22 of the Fiduciaries Act was a sound exercise of the discretionary power vested in it, as this court will not substitute its judgment for that of the court below in matters requiring discretion.

The common law rule of universal application was that the date of declaration of dividends fixes the rights of the parties to them, and they are not subject to apportionment. In *Given's Estate*, 323 Pa. 456, 459, it is stated: "The well established principle with respect to dividends is: 'It is the declaration of the dividend which creates both the dividend itself and the right of the stockholder to demand and receive it': Fletcher on Private Corporations (Permanent edition), section 5321; *Opperman's Est.*, 319 Pa. 455, 464, 465." The injustice of this rule with reference to extraordinary dividends declared out of profits permitted to accumulate over a period of time caused this court to depart from it and apply to them the well known equitable principles of apportionment, which had their inception in *Earp's Appeal*, 28 Pa. 368. Notwithstanding the modification of the common law rule to the extent of apportionment of extraordinary dividends, it has been rigidly adhered to in the cases of other dividends, and its application to ordinary dividends has been asserted on many occasions.

This court has repeatedly stated that ordinary dividends are not subject to apportionment in the absence of unusual circumstances, and must go in their entirety to the person entitled to them at the date of their declaration, which, under our decisions, is determinative of the rights of the parties, for the reason that the declaration brings into existence both the dividend and the shareholder's right to receive it: *Given's Estate*, supra; *Opperman's Estate (No. 1)*, 319 Pa. 455, 459, 460; *Waterhouse's Estate*, 308 Pa. 422, 428; *Nirdlinger's Estate*, 290 Pa. 457, 462; *McKeown's Estate*, 263 Pa. 78, 86; *Earp's Appeal*, supra, at p. 375. In *Opperman's Estate (No. 1)*, supra, the term "unusual circumstance" was held not to include preservation of intact value and was defined to be "not one set up by the fiduciary or the court, but comes from some administrative or corporate act within the corporation or some breakdown within the corporate structure."

The established rule denying apportionment of ordinary dividends was done away with by Section 22[1] of the Fiduciaries Act, supra, which is a legislative direction that dividends "shall, like interest on money lent, be considered as accruing from day to day, and shall be apportioned to the date of the death" of a life beneficiary. In *Thompson's Estate*, 6 D. & C. 503, 506, the late Judge GEST in commenting on this section said: ". . . section 22 is merely expressive of the legislative intent to do the same justice as between life-tenant and remainderman with respect to ordinary and current dividends, as the rule in *Earp's Estate* effects in the case of

---

[1] "All annuities, and all payments of rents, income, interest, or dividends of any real or personal property, directed by any will to be made during the lifetime of the beneficiary, or for the life or lives of another person or persons, or for a term of years, shall, like interest on money lent, be considered as accruing from day to day, and shall be apportioned to the date of the death of such beneficiary or of such cestui que vie, or to the end of such term of years."

extraordinary dividends." Recently in *Given's Estate,* supra, this court discussed at some length the scope of the application of this statute in reference to dividends, and, while the case turned on the construction of the will there involved and an interpretation of the word "income," it was concluded that the Act applies only to ordinary dividends. This court said at p. 461: "While the legislature certainly had some purpose in mind which it wished to accomplish by the act, it could not have intended to bring about unusual or impracticable results based on a conception of dividends which has no reasonable existence in fact, nor to override the intention expressed in a will. Where dividends *are regularly declared at uniform intervals and have been paid for years on that basis,* there is more reason to imply in law that the earnings accrue daily as interest on money lent and this furnishes a basis to sustain what might otherwise be considered as a legislative assertion of a fact not in existence. The operation of the Act should be limited to such dividends." Its operation is limited to ordinary dividends, i. e., dividends which are regularly declared at fixed and uniform intervals and which have been paid for years on such basis. To come within the statute a dividend must have all these elements. This court has consistently in the past so defined the term "ordinary dividend," when used with reference to apportionment. In *Earp's Appeal,* supra, at p. 375, ordinary dividends were declared to be those periodically declared in small amounts with brief intervals between payments, while in *Opperman's Estate (No. 1),* supra, at p. 464, they were defined as dividends which are "regularly declared, at uniform intervals and rates."

When it has been shown that a corporation has pursued a uniform dividend policy over a period of time, making regular and periodic payments, so that the time and amount of future dividends may be forecast with a strong likelihood of accuracy, an ordinary dividend declared in pursuance of its policy must be apportioned in

accordance with the legislative mandate contained in Section 22 of the Fiduciaries Act. In such cases only is it justifiable to treat dividends "like interest on money lent" and consider that they were earned on a per diem basis. Furthermore, by limiting Section 22 to dividends of this character there is not present the practical difficulty of delay in the settlement of estates, which would be occasioned should it be construed to apply to dividends in general irrespective of the regularity of their payment.

It is to be noted that Section 22 is by its express terms confined to the apportionment of ordinary dividends at the termination of a life estate under a trust created by will; and it has been held not to apply to the apportionment of such dividends with regard to the date of the death of the testator: *Opperman's Estate (No. 1)*, supra, at page 465. In view of the fact that there is no reference made to "remaindermen," which would indicate it is to have application only to apportionment at the termination of the trust, its general language is to be given full effect without implied limitation, and apportionment between successive life tenants must be considered as within its purview.

Was the cash dividend of March 30, 1932, an ordinary dividend within the meaning of that term as defined above, requiring apportionment under Section 22? Generally speaking the conclusion reached by the court below in the exercise of its sound discretion will be accepted. Fortunately in the instant case there is no room for doubt, and the court *en banc* properly found that it was not an ordinary dividend. It lacked both regularity and uniformity.

The next matter to be considered is appellants' contention that the dividend in question should be apportioned under the equitable principles applied by this court to extraordinary dividends because of its irregular character, which is asserted to be an indication that both the time of payment and the amount paid was at the

caprice of the directors. Appellants do not argue that it was an "extraordinary dividend" in the sense that term has been used in these cases. The auditing judge arrived at the conclusion that it was not an extraordinary dividend, and as appellants took no exception to this finding, it need not be considered on this appeal. But, it may be said by way of aid in the future determination of similar questions, that the court below properly concluded within its discretionary power that it was not an extraordinary dividend. It is true that the form of a dividend does not control its classification as extraordinary. An extraordinary dividend may be cash, stock, or scrip: *Mandeville's Estate,* 286 Pa. 368; *Flaccus's Estate,* 283 Pa. 185, 194. In the vast majority of cases which have come before this court, the extraordinary dividends involved have been stock dividends. The general distinction between extraordinary dividends and ordinary dividends is that the former are so unusual in amount or form as to require an investigation into their source and apportionment according to equitable principles rather than an application of the common law rule that a dividend belongs to the party entitled to it at the date of its declaration. In other words the unusual character of the dividend requires form and convenience to give way to substance and equity. In *Nirdlinger's Estate,* 290 Pa. 457, 461-462, this court indicated generally the difference between ordinary and extraordinary dividends: "Earnings of a corporation may be divided into gross and net, and the net earnings may again be divided into (1) that portion applicable to a usual or customary dividend at a fixed per cent or sum per share, paid at regular periods, and (2) extraordinary dividends which may assume an unusual form and amount, paid at irregular intervals from accumulated surplus or earnings. Both kinds of dividends must, of course, be declared out of earnings or profits."

There have been exceedingly few cases where a cash dividend has been classified as extraordinary, and in no

case has this been done in the absence of unusual circumstances. Irregularity without more has not given rise to the apportionment of cash dividends. Cash disbursements by "wasting asset" companies, engaged in businesses necessitating the consumption and ultimate exhaustion of their assets in order to operate at a profit, have been apportioned as extraordinary dividends where they represent, in part at least, distribution of the proceeds of capital assets. Such corporations are permitted to declare dividends out of surplus without making any deduction for depletion in their assets caused by normal business operations. See Act of May 5, 1933, P. L. 364, Section 701 (c).[2] In these cases apportionment is a vital necessity to the preservation of intact value. See *Mandeville's Estate*, supra. Also, the proceeds of the sale of capital assets of a corporation upon distribution to shareholders have been awarded to corpus: *Graham's Estate*, 198 Pa. 216; *Eisner's Estate*, 175 Pa. 143; *Vinton's Appeal*, 99 Pa. 434. Other cases involving cash dividends are: *Stokes's Estate (No. 1)*, 240 Pa. 277; *Thompson's Estate*, 262 Pa. 278; *Smith's Estate*, 140 Pa. 344. These cases show that ordinarily cash dividends have not been treated as extraordinary, except where used to exercise subscription rights, and thus, in reality, stock dividends, or where declared from capital, however produced, or where of an unusual nature. The intimation in *Stokes's Estate (No. 2)*, 240 Pa. 288, that an ordinary cash dividend would be apportioned if an impairment of intact value was shown was disposed of

---

[2] "A corporation engaged solely or substantially in the exploitation of mines, oil wells, gas wells, patents, or other wasting assets, or organized solely or substantially to liquidate specific assets, need not make any deduction for the depletion of such assets by lapse of time, consumption, liquidation, or exploitation in computing the fund available for dividends, and such a corporation may pay dividends from the net profits arising from its business without deduction of such depletion, subject, however, to the rights of shareholders of different classes."

in *Opperman's Estate (No. 1)*, supra; and *Given's Estate*, supra, where the court denied apportionment of cash dividends because the testator's will indicated such intent, does not deviate from our consistent attitude with respect to cash dividends.

The reason for not apportioning cash dividends, though irregular, is apparent. We have held they do not come within Section 22, and no one has ever questioned the right of a corporation to withhold out of profits a reasonable surplus as a protective barrier against future uncertainties. The retention of surplus does not vest title to it in those persons who would have received it if it had been distributed as earned, no matter when and how distribution takes place: *Neafie's Estate*, supra; *Opperman's Estate (No. 1)*, supra, at pp. 461, 462; *Nirdlinger's Estate*, supra, at p. 477; nor can the estate of a deceased life tenant claim such profits withheld during his lifetime and distributed thereafter, except in the instances mentioned.

Practical difficulties sometimes make apportionment of even an extraordinary cash dividend impossible, and for this reason it becomes a discretionary matter. We have held the question cannot arise where such dividend is declared after the termination of the trust; the rights of a deceased life tenant end on the termination of the trust: *Neafie's Estate*, supra. But the death of a life tenant does not act as an absolute bar between successive life tenants to claim earnings where it is deemed equitable by the court: *Neafie's Estate*, supra. The paramount factors to be considered are the delay attendant upon the settlement of the deceased life tenant's estate, and the time when the fund comes into the trust and the means by which it was procured. Where the distribution is the voluntary act of the trustee in liquidating the shares of the trust by sale, it is possible no practical difficulties may stand in the way. In *Neafie's Estate*, supra, the court below found no obstacle to such an equitable apportionment. No inflexible rule can be

laid down controlling the circumstances warranting equitable apportionment. But, as stated, usually a cash dividend is governed by the common law rule that the date of declaration is determinative of its ownership, except where it is ordinary and apportionable under Section 22 of the Fiduciaries Act. In the instant case the action of the court below following the general common law rule was not an abuse of discretion and will not be disturbed.

Decree affirmed at appellants' cost.