Fisher's Estate.

Argued March 25, 1942. Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

608

*Ella Graubart,* with her *Charles F. C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn,* for appellant.

*George V. Moore,* for appellee.

OPINION BY MR. JUSTICE PARKER, May 13, 1942:

This appeal involves the right to apportionment of the proceeds of a sale of cumulative preferred stock of a corporation among successive life tenants and remaindermen in a testamentary trust. A new question is presented as the cases of apportionment heretofore decided by this court have been concerned exclusively with common stock.[1]

Mary Marlin Fisher died on February 17, 1938, after providing by her will that a portion of her residuary estate should be held in trust for her daughter, Augusta F. Porter, for life, then for her grandson, William L. Mitchell, for life, with remainder to various other grandchildren, the minors among whom are represented by a guardian ad litem. The first life tenant died on July 7, 1939. Among the assets awarded to the trustee were 97 shares of 7% cumulative preferred stock of the Crucible Steel Company of America. These shares had a par value of $100 and upon liquidation of the corporation were entitled to a preference of $100 plus accumulated unpaid dividends.

On July 1, 1940, the company was in arrears in dividends in the amount of $40.75 per share on its 238,800 preferred shares outstanding. No dividends had been paid on the common stock for some time and there was no immediate prospect of a resumption of dividends on such stock for a considerable time as all of the preferred dividends were required to be paid first. At that date the earned surplus account showed a deficit of $29,187,-

---

[1] In *Given's Est.,* 323 Pa. 456, 185 A. 778, a large preferred dividend was involved but the decision was based on a construction of testator's will.

889.26. August 5, 1940, the board of directors of the company submitted a plan to its common and preferred stockholders, one of the avowed objects of which was "to take care of accumulated dividends on the 7% preferred stock." The plan called for a merger of the company with its principal subsidiary, the Pittsburgh Crucible Steel Company. Each common share of the old company of $100 par value was to be exchanged for a common share of the continuing corporation with no par value but a stated value of $25. Each preferred share of the old company was to be exchanged for 1.4 shares of 5% preferred stock of the continuing corporation with dividends cumulative from July 1, 1940, par value of $100 a share, redeemable at $110 per share at the option of the corporation, and entitled to a preference on involuntary dissolution of $100 per share and on voluntary dissolution of $110 per share plus accumulated dividends in either event.

The agreed facts, including the table in the footnote,[2] show conclusively that satisfaction of the accumulated dividends on the old preferred stock was to be accomplished by capital contributions from the common stockholders of the old corporation so that there was no impairment of the par value of the preferred stock

---

[2] Capital Stock:

| | Before Merger | After Merger |
|---|---|---|
| 7% Cumulative Preferred, $100 par value; outstanding, 238,800 shares | $23,880,000.00 | |
| 5% Convertible Preferred, $100 par value; outstanding, 334,320 shares | | $33,432,000.00 |
| Common Stock, $100 par value; outstanding, 445,197.73 shares | 44,519,773.00 | |
| Common Stock; no par value; outstanding, 445,197.73 shares, with stated value of $25 per share | | 11,129,943.25 |
| Surplus: | | |
| Earned Surplus ........ (Deficit) | (29,187,889.26) | 2,030,146.08 |
| Capital Surplus | 7,250,453.18 | 7,561,856.13 |

and a substantial capital surplus. The merger was effected according to this plan in October, 1940, and the trustee received 135.8 shares of the preferred stock of the new or continuing corporation in exchange for 97 shares in the old corporation. During October, November and December of the same year the trustee sold these new shares for a total sum of $11,982.43, or an average price of $88.23 per share. On February 17, 1938, the date of the death of Mary Marlin Fisher, the market value of the preferred stock of the Crucible Steel Company of America was $82 per share. The par value of each of the 97 shares in the old and in the continuing corporation was $100.

When the trustee filed an account on March 3, 1941, treating the entire proceeds of the sale of this stock as corpus, appellant, the present life tenant, filed exceptions claiming he was entitled to that part of the proceeds which represented the accumulated dividends on the old shares. The court below held that the whole sum was properly assigned to corpus on the ground that nothing had taken place within the corporation or trust estate which would entitle the life tenant to participate in the distribution as there had been merely a merger of two corporations, relying on *Buist's Est.*, 297 Pa. 537, 147 A. 606, and since the additional preferred shares arose from contributed capital rather than income, citing *Opperman's Est. (No. 1)*, 319 Pa. 455, 179 A. 729.

We are all of the opinion that the life tenant is entitled to more consideration and that he should receive some share of the proceeds of the sale of this stock. There is no difficulty in the way of doing justice to life tenant and remaindermen without any departure from the principles declared in our previous apportionment cases. It is only required that we take into account the essential differences in the rights of preferred and common stockholders in a corporation and the conditions of the merger involved.

The Crucible Steel Company of America for several years, during the depression, operated at a loss so that it found itself in a position where it was in arrears in dividends on the preferred stock for almost six years. In 1940 the company was beginning to operate at a profit and its capital was not impaired. Nevertheless, it could not for some time discharge the arrearages in dividends on the preferred stock and no dividends could be paid on the common stock until the dividends on the preferred were brought up to date. Under the plan devised one of the main objectives was to "equitably satisfy" the accumulated dividends. To meet that situation each preferred stockholder was given the same number of preferred shares in the continuing corporation which he formerly had and an additional forty per cent of stock which calculated at par would give to each share $40, a sum within 75 cents of the arrearages in dividends. When we take into account that the preferred stockholder would not in the natural course of events have received dividends in full to date for several years, while under the merger they were received at once, the small difference disappears.

The trustee here received 97 shares in the continuing corporation in lieu of an equal amount of stock in the old corporation, of the same par value with equal priorities. He also received 38.8 shares in return for the dividends as to which the estate then had. a prospective preference.

We must distinguish between the rights and duties of the stockholders with relation to the corporate entity and the respective rights of life tenants and remaindermen. So considering the matter, the common stockholders procured available values by rearrangement of the capital structure of the corporation, all by proceedings legally conducted. This was a matter of corporation law. They then transferred those values to the preferred stockholders in discharge of rights which such stockholders had to receive dividends. In fact, in that

manner the payment of dividends to such preferred stockholders was merely anticipated. As between life tenant and remaindermen the additional stock was in fact given in discharge of dividends and must be so treated.

Appellee argues that since the 40% additional preferred stock was not based on earnings it was not distributable to life tenants, citing *Opperman's Est. (No. 1)*, supra. We there said (p. 462) : "There is, however, a distinction between earned surplus and contributed capital. Contributed capital is neither earnings nor increment, nor may it be included in 'income' when that term is used in a will and, if paid by way of dividends, current or otherwise, it belongs to corpus." The cases are not parallel for there we were dealing with a contribution by the common stockholders to common stock and, of course, contributed capital constituted capital and not earnings. Here a sum was paid into the capital account representing preferred stock not by the preferred stockholders but by the common stockholders so that payment of the preferred dividends might be anticipated. The fund provided came neither from earnings nor from contributions by preferred stockholders. The life tenant gave up his right to receive dividends which were in arrears on the old stock and he is entitled to some reimbursement.

The appellee, relying on *Buist's Est.*, supra, also contends that the circumstances of the merger do not present a case within any of the four situations outlined there as sufficient to entitle the life tenant to apportionment. But the summary there given did not define precisely all circumstances warranting an apportionment: *Daily's Est.*, 323 Pa. 42, 46, 186 A. 754. In addition the cases are clearly distinguishable on their facts. In that case common stock alone was involved and after the merger the relative rights of life tenant and remainderman were not changed and the increment was due to a change in the intrinsic value of the assets. Here the values which

form the basis for issuing 40% additional preferred stock were furnished by the common stockholders and were supplied for the purpose of discharging the arrearages in preferred dividends. In apportionment cases we determine the relative rights of life tenants and remaindermen and in doing so we examine the corporate acts only for the purpose of ascertaining how those rights have been affected and especially to see that the intact value of the trust estate is maintained. The additional values assigned to the preferred stock issue did not come from the corpus of the estate or affect it but were supplied by another class of stockholders for the purpose of paying the arrearages in dividends.

It is clear that the sale of the Crucible stock furnished the occasion for an apportionment and that the life tenant is entitled to participate in the proceeds received from the sale of this stock. Equitable principles are applied in all apportionment cases and the primary intent of the testator to provide for those nearest to her an income would seem to demand such a conclusion. The thought was tersely expressed in *Nirdlinger's Est. (No. 2)*, 327 Pa. 171, 174, 193 A. 30: "Life tenants should not be required to starve in order that remaindermen may ultimately feast."

We have considered what we have described as the occasion for an apportionment and shown that an apportionment should be made. It remains to inquire how it should be made. More than half of the arrearages accumulated prior to Mrs. Fisher's death and parts during the lives of the first and the present life tenants. However, the distribution of the stock which we have held to be the equivalent of a dividend was authorized and completed within the lifetime of the present life tenant. Under the Pennsylvania rule when an apportionment is made between life tenants and remaindermen in a trust estate consideration is given not only to the primary intent of the donor or testator to provide an income for the life tenants, but also to the preservation of the corpus

for the benefit of both life tenants and remaindermen. With that end in view consideration will now be given to the preservation of the "intact value" of the corpus.

It becomes necessary to inquire whether the intact value of cumulative preferred stock is limited to par value. "It was early stated that intact value includes par value of stock when par has been paid, plus any accumulations at the date of death [*Earp's Appeal*, 28 Pa. 368], but, prima facie, intact value is book value": *Waterhouse's Estate*, 308 Pa. 422, 427, 162 A. 295. We were there considering common stock, but cumulative preferred stock of the kind with which we are here dealing is not entitled to receive any larger dividend than is prescribed by the charter or by-laws and is not entitled to any dividend until there are sufficient earnings to pay the same. Preferred stock in the case of liquidation is also limited as to the amount to be assigned to it.

In the case of common stock the book value is ordinarily found by adding to par value the "plus value" of surplus, while in the case of cumulative preferred stock a different situation is presented and the answer is not so clear. When preferred dividends are regularly paid it is most evident that they are ordinary dividends and are to be allocated to income except insofar as §22 of the Fiduciaries Act is pertinent, a matter which we will consider later. When dividends have been passed prior to the creation of the trust or during a prior life estate and are then declared during a subsequent life estate a more serious question arises. Since the cumulative preferred stockholder has a right prior to that of the common stockholder to receive dividends when earned, it might be argued that when the dividends are in arrears, such arrearages represent a "plus value" which should be taken into account in determining the intact value of such shares. See 2 Scott on Trusts §236.8.

Restatement, Trusts, §236, comment (o), adopts the view that accumulated dividends on preferred shares paid during the period of the trust are ordinary divi-

dends and belong to the life tenant during whose life they are declared whether or not "paid out of earnings of the corporation accruing during the period of the trust or prior thereto." That rule is apparently based entirely upon *Thompson v. New York Trust Co.,* 177 N. Y. Supp. 299, 191 App. Div. 904, 181 N. Y. Supp. 956. In *Heyn v. Fidelity Trust,* 174 Md. 639, 650, 1 A.2d 83, a contrary conclusion was reached apparently on the theory that the dividend was extraordinary. Maryland and New York[3] have followed the general Pennsylvania rule as to maintenance of intact value and distribution of dividends between life tenants and remaindermen.

We regard the view expressed in the New York case and followed in the Restatement as preferable. Under this view the fact that dividends have accumulated prior to the creation of the trust adds nothing to the intact value of the corpus. The intact value is the book value which, in turn, is ordinarily par. It is reasonable to assume that testator or settlor intended that any accumulated dividends when paid during the life tenancy would inure to the life tenant, the primary object of his bounty. Such rule also promotes uniformity, for it has been repeatedly held that ordinary dividends "must go in their entirety to the person entitled to them at the date of their declaration": *Nirdlinger's Estate (No. 1),* 327 Pa. 160, 165, 193 A. 33. The intact value of cumulative preferred shares will ordinarily, therefore, be the par value, if the capital is not impaired.

An examination of the cases dealing with apportionment discloses that in considering apportionment equitable principles frequently require a departure from the rigid rules. It may well be that peculiar situations involving preferred stock may be presented in the future which will call for similar treatment. We have been dealing here with what is generally described as cumulative preferred and non-participating stock. A differ-

---

[3] See statutory change as to stock dividends: N. Y. Laws 1926, c. 843.

ent situation might well be presented were we dealing with a class of preferred stock which permits such stock to participate in excess earnings.

We are of the opinion that §22 of the Fiduciaries Act of 1917 (20 PS §634) is not applicable to the situation presented here. That act has no application to the apportionment of dividends with relation to the date of the death of the testator and it provides only "for the apportionment of regular dividends between successive life tenants on a per diem basis as bond interest is apportioned": *Opperman's Estate (No. 1)*, supra (p. 465). Neither is it applicable under the circumstances here as between the successive life tenants. "Where dividends are *regularly declared at uniform intervals and have been paid for years on that basis*, there is more reason to imply in law that the earnings accrue daily as interest on money lent and this furnishes a basis to sustain what might otherwise be considered as a legislative assertion of a fact not in existence. The operation of the Act should be limited to such dividends": *Given's Estate*, 323 Pa. 456, 461, 185 A. 778. While the distribution made here was the equivalent of a dividend, it was not paid regularly. In addition, as no part of the dividend was earned during the life tenancy of Mrs. Porter, her estate would have no equitable ground to participate. The present life tenant is entitled to receive the proceeds of 38.8 shares as income.

The decree of the court below is reversed and the record is remitted that distribution may be made in harmony with our conclusion, costs to be paid from the principal of the trust estate.