Philadelphia Electric Company Case.
Reading Company Case.

458

Argued May 21, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Thomas B. K. Ringe,* with him *H. Orvel Sebring, Jr., Wm. Clarke Mason, J. Wesley Oler* and *Morgan, Lewis & Bockius,* for Phila. Electric Co. and for Reading Co.

*Ralph B. Umsted,* with him *N. L. Wymard,* Deputy Attorneys General, and *James H. Duff,* Attorney General, for Commonwealth.

Opinion by Mr. Justice Jones, June 29, 1945:

These appeals grow out of proceedings instituted in the court below by the Attorney General in behalf of the Commonwealth under the Act of June 25, 1937, P. L. 2063, 27 P. S. §§434 et seq. As in *Pennsylvania Power & Light Company Case,* 352 Pa. 466, 43 A. 2d 114, the proceedings were designed to require the respondent companies to pay into the State Treasury without escheat certain moneys and property held by the respondents consisting of dividends or profits, debts and interest on debts, customers' advances, tolls or deposits, stock or certificates of beneficial interest, all of which had been reported annually by the respondents to the Secretary of Revenue as required by the Act and which had remained unpaid and unclaimed for six or more successive years.

In the instant cases, the learned court below entered orders in keeping with the prayers of the respective petitions except that in the case of the Philadelphia Electric Company certain dividends in its possession were excluded from the order. Both the respondent company

and the Commonwealth have appealed from the order in that case. In the proceeding against the Reading Company only the respondent company has appealed from the order entered against it. The three appeals will be dealt with in this opinion.

In the *Pennsylvania Power & Light Company Case,* cit. supra, the appellant company conceded that the funds there involved were "subject to escheat under existing law"; and all that we had for decision in that case was whether it was necessary for the petitioner also to aver that, while the funds in question had been unclaimed and unpaid for six or more successive years, the owners thereof had remained unknown or had died intestate without leaving heirs or other known kindred. While the present appellant companies raise the same question, it is unnecessary for us to do more than overrule their contentions in such regard and refer to our decision in the *Pennsylvania Power & Light Company Case,* supra.

However, unlike the appellant in the *Pennsylvania Power & Light Company Case,* the appellant companies in the instant cases deny that the funds in controversy were "subject to escheat under existing law" at the time of the enactment of the Act of 1937. Accordingly, they contend that the funds here involved were not subject to orders requiring their payment into the State Treasury without escheat or, in the case of the stock certificates held by the respondents, that they be sold and the proceeds paid into the State Treasury. The appellant companies also contend that the procedure prescribed by Section 9 of the Act of 1937 [1] works a deprivation of property without due process of law and an impairment of the obligation of contracts and is, therefore, unconstitutional

---

[1] Section 9 of the Act of 1937 which provides the "Alternative Procedure for Payment into State Treasury without Escheat" is quoted in full in footnote 1 in the *Pennsylvania Power & Light Company Case* at p. 467 ante.

and void; and, further, that the power conferred by Section 9 cannot be exercised against non-residents.

The Philadelphia Electric Company contends additionally that the required sale of the unclaimed stock which it holds and which had been issued for use in an exchange for stock in certain of the company's predecessors would violate Article XVI, Sections 7 and 10, of the Constitution of Pennsylvania [2]; that the unclaimed dividends on common stock of the company are not escheatable because no funds had been set aside or provided for their payment; and that none of the customers' deposits are escheatable for the reason that no claims for their repayment had been presented to the company within six years immediately preceding the passage of the Act of 1937.

The Reading Company further contends that it cannot rightly be required to pay into the State Treasury without escheat the sum of $4,000, representing four outstanding matured bonds of a predecessor company in a face amount of $1,000 each, for which the Reading Company is liable. It alleges in its answer that these bonds were part of an issue secured by an indenture of trust and that it had given the trustee its bond of in-

---

[2] Sections 7 and 10 of Article XVI of the Constitution of Pennsylvania provide as follows:

"No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock and indebtedness of corporations shall not be increased except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock, first obtained at a meeting to be held after sixty days notice given in pursuance of law."

"The General Assembly shall have the power to alter, revoke or annul any charter of incorporation now existing and revokable at the adoption of this Constitution, or any that may hereafter be created, whenever in their opinion it may be injurious to the citizens of this Commonwealth, in such manner, however, that no injustice shall be done to the corporators. No law hereafter enacted shall create, renew or extend the charter of more than one corporation."

demnity to hold the trustee harmless against any demand that might be made of it by an owner of any of the unredeemed bonds and that, if the redemption value of the bonds is paid into the State Treasury, the Reading Company might be subjected to further liability at the instance either of an owner of one or more of the bonds or of the trustee under the bond of indemnity, the trustee not being a party to the instant proceeding.

The clause, "subject to escheat under existing law", as used to qualify the moneys and property against which the alternative procedure provided by the Act of 1937 for the payment thereof into the State Treasury without escheat is directed, has reference to the character of the funds and not to their status with relation to the possible entry of a decree of escheat with respect thereto. *Cf. Pennsylvania Power & Light Company Case,* at page 466 ante. That the funds here involved were appropriate matter for escheat at the time of the enactment of the Act of 1937, we think is clear. Dividends or profits declared by any corporation and any debt or interest on debt owed by a corporation were made "escheatable to the Commonwealth" by the Act of June 7, 1915, P. L. 878, Section 7 (27 P. S. §282). The Act of 1915, as amended by the Act of April 21, 1921, P. L. 223, further provided that ". . . any moneys or property held by any . . . corporation . . . belonging to any other person, the escheat of which is not otherwise provided for in this section, . . . shall be escheatable to the Commonwealth . . . ." Of course, before moneys or property may be actually escheated under the provisions of the Act of 1915 or the amendment thereof, the want of a claim to the moneys or property or the non-payment thereof for the period of time prescribed by the applicable statute would necessarily have to be established. The implication in *Edelman v. Boardman,* 332 Pa. 85, 95, 2 A. 2d 393, that, except for the Act of 1937, the escheatability of property such as the present is involved

in "reasonable, or even serious, doubt" did not conclude the ultimate issue. Nor was it intended so to do. A definitive answer to that question was neither required there nor given. That the moneys and property here in controversy were escheatable under existing law, we have already pointed out; and that satisfies the requirement of the Act of 1937.

The constitutional objections made to Section 9 of the Act of 1937 may readily be disposed of. The power of the legislature to render property of the character here involved subject to escheat in favor of the Commonwealth is clear: *In re Escheat of Moneys in Custody of United States Treasury*, 322 Pa. 481, 484-485, 186 A. 600, 326 Pa. 260, 192 A. 256, affirmed 303 U. S. 276; *Germantown Trust Co. v. Powell*, 265 Pa. 71, 77, 108 A. 441; *Commonwealth v. Dollar Savings Bank*, 259 Pa. 138, 145, 102 A. 569; *Cunnius v. Reading School District*, 206 Pa. 469, 471, 56 A. 16, affirmed 198 U. S. 458; *Security Savings Bank v. State of California*, 263 U. S. 282, 285-286. A legislative provision for escheat is a valid exercise of the police power of the State: see *Cunnius v. Reading School District*, supra, at p. 469 of 198 U. S. There is, therefore, no merit in the contention of the appellant companies that the Act of 1937, construed together with the Act of 1915, works a deprivation of property without due process of law. Nor do those statutes serve to impair the obligation of contracts. The constitutional guarantee in such connection is likewise subject to an appropriate exercise of the State's police power: *Zeuger Milk Company v. Pittsburgh School District*, 334 Pa. 277, 280, 5 A. 2d 885.

The fact that the statute of limitations may have run against the owners of the property in controversy as between them and the accountable corporate custodian does not operate to defeat the Commonwealth's escheatage: *Commonwealth ex rel. v. Cunningham*, 337 Pa. 289, 297-298, 10 A. 2d 559. A statute of limitations provides a procedural limitation but does not deal with substan-

tive rights. *In Germantown Trust Co. v. Powell,* supra, at p. 83, this Court upheld Section 15 of the Act of 1915 (27 P. S. § 261). That Section is substantially the same as Section 13 of the Act of 1937 which provides that "The bar of statutes of limitation and presumptions of payment shall not affect the duty of making reports and payments to the Commonwealth under the provision of this act."

As to the contention of the appellant companies that proceedings under the Act of 1937 cannot be maintained against non-resident owners, the Supreme Court of the United States has confirmed the jurisdiction of a State over intangibles and its power to subject them to escheat even as against possible non-resident owners: see *Security Savings Bank v. State of California,* supra. Cf. also *Schuylkill Trust Co. v. Pennsylvania,* 302 U. S. 506, 514-515, affirming this Court's decision in 327 Pa. 127, 193 A. 638, where a Pennsylvania statute providing for the taxation of the shares of a domestic corporation was held to be constitutional when applied to non-resident stockholders on the ground that the property was amenable to Pennsylvania's jurisdiction.

There is no danger that the Reading Company, by paying the redemption (face) value of the matured and unredeemed bonds into the State Treasury, may be subjected to double liability either on account of the bonds themselves or on account of the company's indemnity bond in favor of the trustee. As was said in *Security Savings Bank v. State of California,* supra, at p. 286, "If the deposit is turned over to the State in obedience to a valid law, the obligation of the bank to the depositor is discharged." To the same end, Section 9 of the Act of 1937 specifically provides that "A receipt of the department [of Revenue] for any moneys or property paid over to the State Treasury, in accordance with the provisions of such order of court [for payment without escheat], shall be a full and sufficient discharge to the said company from any further liability with respect to such

moneys or property to any person or company legally entitled thereto."

There remains then to be considered the effect of Section 3 (a) (1) of the Act of 1937 which requires an annual report by all corporations of declared and unclaimed dividends "where funds have been provided by the company for the payment of said dividends" and Section 9 of the same Act which provides for the payment into the State Treasury without escheat "of any items of money or property required to be reported under the provisions of this act." It is the contention of the Philadelphia Electric Company that, although it had declared the dividends which remained in its possession unclaimed, it had not provided funds for their payment, in that, it had not specifically set aside a reserve or an earmarked fund for the payment of the declared dividends. The learned court below found to that effect and held, accordingly, that the unclaimed dividends were not subject to an order requiring them to be paid into the State Treasury without escheat. We think that was error.

By statute, dividends may be declared only out of net profits or accumulated earned surplus: see Act of May 5, 1933, P. L. 364, Art. VII, Section 701, as amended, 15 P. S. § 2852-701, which is declaratory of the prior law. See Act of May 23, 1913, P. L. 336, Section 1, and Act of July 12, 1919, P. L. 914, Section 8. A valid declaration of a dividend automatically carries with it in legal contemplation an allocation of the available funds necessary for its payment: see *Given's Estate,* 323 Pa. 456, 461, 185 A. 778. It is of no present importance that in *Given's Estate,* supra, it was held that a debtor and creditor relationship is created between a corporation and its stockholder upon the declaration of a dividend. We are not here concerned with the character of the stockholder's legal right to a declared dividend but rather with the fact that the declaration of a dividend legally implies a setting aside from the corporation's earnings of the amount necessary to pay the declared dividend.

The Act of 1915, under which a stockholder's right to an unclaimed dividend may be extinguished by a decree of escheat in favor of the Commonwealth, places no restriction on the operation of that statute to cases where "funds have been provided by the company for the payment of said dividends." It would be unreasonable to conclude that the legislature intended to impose the limitation where the unclaimed dividend is merely to be paid into the State Treasury without escheat, there to await the call of its owner. At best, the qualification with respect to unclaimed dividends required to be reported by Section 3 (a) (1) of the Act of 1937 is surplusage. The unavoidable requirements of the law in the circumstances imply that the funds necessary for the payment of the dividends declared were provided.

The order appealed from at Nos. 264 and 272 is modified so as to include the unclaimed dividends in the hands of the Philadelphia Electric Company and, as so modified, is affirmed; the costs on said appeals to be paid by the appellant company. The order appealed from at No. 265 is affirmed at the appellant's costs.

Argued May 21, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.