County Commissioners v. Prothonotary

90

D. *LaBarre*, for county commissioners.

O. J. *Tallman*, for county controller.

C. A. *Cassone*, for prothonotary.

G. A. *Rupp*, for county treasurer.

R. W. *Snyder*, for county tax claim bureau.

HENNINGER, P. J., July 8, 1957.—This interesting action is brought by the county commissioners and the county controller against the prothonotary, the county

treasurer and the Lehigh County Tax Claim Bureau to determine the proper custodian and the eventual owner of moneys realized from the proceeds of sales of property in Lehigh County under the Real Estate Tax Sale Law of July 7, 1947, P. L. 1368, 72 PS §5860.101, et seq.

The parties ask the court to determine the status of (1) "unclaimed" proceeds from such sales; (2) "disputed claims" for such proceeds; (3) such proceeds heretofore paid into court; and (4) "unclaimed and disputed" proceeds hereafter to be received.

The parties agree that the tax sale law provides no machinery for an authoritative determination of the ownership of such proceeds, excepting as the authorities are protected by title searches showing ownership of the properties sold and liens thereon.

In the past the tax claim bureau has sought an order that unclaimed moneys and disputed claims should be paid into court and there is an unspecified amount representing the proceeds of such claims in the prothonotary's account of money paid into court.

The county treasurer presently has in his possession $8,116.96 of such money and expects to receive further sums in the future.

In 1949 there was enacted the Municipal Unclaimed Moneys Act of May 17, 1949, P. L. 1403, 27 PS §491, et seq., which provided in its section 5, 27 PS §495, partly as follows:

"(a) Whenever any moneys shall have been paid over to any municipal officer which do not belong to such municipal officer and no provision is made by law for the payment over of such moneys into the municipal treasury, if no claim for the payment over of such moneys is made by the party legally entitled thereto within a period of one year after the same was paid to the municipal officer or before the expiration of the

term of office of such municipal officer, regardless of the time the same came into his possession, then it shall be the duty of the municipal officer, upon the expiration of said one year period or upon the expiration of his term of office, as the case may be, to pay all of such moneys, together with any interest earnings thereon, over to the municipal treasurer for safekeeping and to furnish to the municipal treasurer a statement of the source from which such moneys were derived and the name of the person or persons, if known, who are legally entitled to such moneys.

"(b) A copy of such statement shall also be filed with the controller in those municipalities where the office of controller has been established. Such moneys shall be deposited in a fund separate and apart from all other public moneys and shall not be paid out for any purpose whatever except as provided by this section.

"The receipt issued by the municipal treasurer showing the payment over of such moneys shall fully discharge the municipal officer or person making such payment and his surety from all liability whatsoever for the payment of such moneys to the person or persons legally entitled thereto . . .

"(c) When any money is paid over to the municipal treasury under the provisions of this section, the person or persons legally entitled thereto, if known, shall be notified to appear and claim the same. If claim is made by any person for the repayment of any moneys deposited in the municipal treasury and the municipal controller, in municipalities where there is a controller, or the municipal treasurer, in municipalities where there is no controller, is satisfied that the claim is proper, the amount thereof shall be paid from the municipal treasury. If payment is refused by the controller or treasurer, the person making the claim

shall have the right of action in assumpsit in the court of common pleas of the county against the municipality to have his rights determined by judicial process. Any such right of action shall be in substitution of any right of action which is discharged by this act. Any judgment obtained shall be paid out of the municipal treasury.

"(f) All moneys paid into the municipal treasury in accordance with the provisions of this section and held for the benefit of any claimant or claimants shall, if no claim therefor is made within seven years from the time the same was paid into the municipal treasury, be escheated to the Commonwealth for the use of the municipality."

The act was intended to accomplish two purposes: (1) To prevent individual officeholders from profiting from unclaimed funds in their hands, and (2) to divert unclaimed funds from State escheat to municipal use.

The act was drawn over an act of similar nature (Act of April 8, 1937, P. L. 284, 16 PS §7901, et seq.) limited to first class counties and which was declared unconstitutional in Commonwealth ex rel. Margiotti v. Cunningham, 337 Pa. 289. The present act, however, has provided for application to the courts by claimants of withheld funds and that would seem to correct the constitutional error in the 1937 act. Furthermore, in this case at least, we are dealing with funds already in the hands of the county treasurer, whereas in the Cunningham case the effort was made to compel the estate of a deceased officeholder to transfer the funds to the county treasurer.

A survey of the operation of the tax claim bureau may help in determining this question. We are not concerned with taxes collected from owners, since all of these have been accounted for.

When tax claims filed with the bureau have not been paid voluntarily by the owner, the properties may be sold at an "upset price sale" comprising the total of Commonwealth tax liens, tax claims and accrued taxes, municipal liens and costs: 72 PS §5860.605. That sale forecloses the owner of the property but does not divest the lien of ground rents and of mortgages which hold priority over all tax claims and other liens.

If no one bids the upset price, the sale shall be continued and, after a title search has revealed the names of the real owner and all lienholders, a rule is granted upon all parties in interest to show cause why the property should not be sold free and clear of their respective claims: 72 PS §5860.610. When this rule has been made absolute, the court orders the property so sold (72 PS §5860.612) and after said sale, the proceeds are distributed first for all costs including $15 for title search and ". . . the remainder of said proceeds shall be distributed by the county treasurer as hereinbefore provided".

The provision referred to is found in section 205, 72 PS §5860.205, as follows:

". . . the moneys received shall be paid over, first, to the respective taxing districts in proportion to the taxes due them; second, the municipal claims against such property due any taxing district; third, mortgages and other liens in order of their priority, and fourth, except in cases of property purchased by a taxing district prior to the effective date of this act and turned over to the bureau for sale, the balance remaining shall be paid to the owner of the property sold. . . ."

The county commissioners are authorized to purchase properties at the judicial sale for $1 (72 PS §5860.612.1) in which case all taxes, liens and estates are divested and the property becomes that of the

county, to gain or to lose on the transaction depending upon the price that may thereafter be realized from it and without accountability upon resale to anyone other than the taxing authorities involved: Amendment of January 18, 1952, P. L. (1951) 2098, sec. 5, 72 PS §5860.612.1.

There is also an elaborate provision for sale at private sale (72 PS §5860.613) after continuance of the upset price sale and after notice to all parties in interest at "any price approved by the bureau", subject to approval of the court of common pleas and to objection by any party in interest.

The Real Estate Tax Sale Law sets up no machinery for adjudicating any disputed claims other than to provide, 72 PS §5860.612: ". . . The remainder of said proceeds shall be distributed by the county treasurer as hereinbefore provided." There is no provision for disposition of unclaimed funds, and we have found no decisions governing their disposition.

In our opinion there is no doubt that these funds are included in the all-inclusive provisions of the Municipal Unclaimed Moneys Act. In section 2 of that act, 27 PS §492, municipality is defined as, inter alia, "a county". The county treasurer handles all funds of the Lehigh County Tax Claim Bureau, under arrangements made in accordance with section 205, 72 PS §5860.205, of the Real Estate Tax Sale Law. He is a municipal officer as defined in section 2 of the Municipal Unclaimed Moneys Act, 27 PS §492, namely: "A person elected or appointed to hold an office in a municipality which receives prepayment of indemnities, holds in escrow, or in any manner handles moneys to some part or all of which other individuals are entitled."

There can be no doubt that the moneys held comply with the provision of section 5 of the Unclaimed

Moneys Act, 27 PS §495: "Whenever any moneys shall have been paid over to any municipal officer, which do not belong to such municipal officer. . . ." We have already determined that the second clause in the same section applies to these funds, namely, ". . . and no provision is made by law for the payment over of such moneys into the municipal treasury. . . ."

That the person, the county treasurer, holding funds not belonging to him is the same person, the municipal treasurer, to whom they are to be entrusted is of no significance. Initially he holds the funds at the disposal of the tax claim bureau; after a year, he holds the fund as the custodian of unclaimed funds to be disbursed under the above-recited provisions of paragraph (e) of section 495 of the Unclaimed Moneys Act. To start the running of the seven-year escheat period provided for in paragraph (f), 27 PS §495(f) above quoted, notice ought to go out from the county treasurer as such to comply with the first sentence of paragraph (e), above quoted, to show that the moneys have passed out of the tax claim bureau and into the control of the county treasurer and the county controller.

That disposes of all moneys now in the hands of the county treasurer as proceeds from upset price sales, judicial sales and private sales of property sold by the Lehigh County Tax Claim Bureau for delinquent taxes. These moneys are not to be confused with the proceeds of properties purchased by the county at the judicial sales (we are assuming that the county would not and probably could not purchase at the upset price sale) and resold later by the county. In that case, the proceeds whether more or less than the cost are the property of the county, subject only to any

responsibility to the other taxing authorities under the amendment of 1951, P. L. 2098, 72 PS §5860.612.1.

We recognize no present distinction between unclaimed and disputed moneys. If the tax claim bureau in the first instance cannot determine the party to whom excess proceeds can be safely paid, it ought to refuse payment, risking suit at the instance of a claimant. Upon such suit it can either resist payment if it believes claimant is not entitled to the money or it can interplead any other adverse claimants (Pennsylvania Rules of Civil Procedure 2301 to 2325, inclusive) and can pay the money into court: Pa. R. C. P. 2307.

If no suit has been brought before the money has been turned over to the county treasurer as the municipal treasurer under the Unclaimed Moneys Act, then the procedure under that act shall prevail. Under paragraph (e) of section 5 of that act, the controller and treasurer pass upon the validity of the claim. If they are not convinced of such validity, then claimant must sue the county in an action of assumpsit. Again the county may simply resist the claim or it may interplead and pay the money into court if there are other possible claimants to the fund.

We recognize that payment into court diverts the fund from escheat to the Commonwealth for municipal uses (27 PS §495 (f)) to escheat for State use: Escheat Act of June 7, 1915, P. L. 878, as variously amended, 27 PS §241 et seq., and particularly subparagraph (b) of section 1 of the Act of May 16, 1935, P. L. 195, 27 PS §282.

Since, however, the Commonwealth by virtue of its sovereign power may take charge of property, abandoned or unclaimed for a period of time, or which has no known owner (Commonwealth v. Dollar Savings Bank, 259 Pa. 138, 145; Germantown Trust Co. v.

Powell, 265 Pa. 71, 77; Philadelphia Electric Co. Case, 352 Pa. 457, 463), the primary right to such funds is in the Commonwealth.

All lesser municipalities are the creatures of the State, which can, within constitutional limits, grant or withhold any privileges as it may see fit.

If the same funds, therefore, are escheatable either to the county or to the State, depending upon whether they are retained by the county treasurer or whether, by reason of litigation they have been paid into court, we find no unjust discrimination in such diversion of funds. The State could have retained all of the moneys in the first place and if it receives back some of them under certain circumstances, there is no harm done.

The moneys paid into court present a more serious problem. We are now convinced that they were inadvertently and improperly paid into court. We have not been able to find any authority for such payment, especially in the absence of a provision that the tax claim bureau shall account through this court. Surely the Municipal Unclaimed Moneys Law, supra, was overlooked when those orders were made.

In this respect we make no distinction between unclaimed moneys and disputed claims for money. So far as we know, there are no disputed claims for any of the money paid into court.

As a result, the court is in possession of moneys of which the county treasurer is the proper custodian. The court will entertain an application to have the moneys paid into court repaid to the county treasurer, less any amounts meanwhile paid out to the rightful owners thereof. We cannot, however, make that order in these proceedings but only on petitions directed to the term and number of the respective actions in which the money was paid into court. Also since the moneys

paid into court would, if unclaimed for seven years, escheat to the State, we believe the Attorney General of the Commonwealth of Pennsylvania should have ample notice of the time and place of presentation of such application.

When the moneys have been restored to the county treasurer, prompt notice should be given according to paragraph (e) of section 5 of the Municipal Unclaimed Moneys Act in order to begin the running of the escheat provisions of the act.

Now, July 8, 1957, it is ordered and decreed that all moneys received by the Lehigh County Tax Claim Bureau for which no claim has been made by the party legally entitled thereto, for the period of one year after the same was paid to such bureau, shall be paid together with any interest thereon into the hands of the county treasurer as such, who shall notify the party or parties legally entitled thereto, if known, to appear and claim the same, and if no such claim is made within seven years from the time the same was paid into the municipal treasurer or within seven years after said notice was given, whichever is later, the same shall upon application to this court be escheated to the Commonwealth for use of the County of Lehigh.

It is further ordered and decreed that the proper county authorities apply to this court in no. 318, January term, 1952, no. 50, April term, 1955, and in no. 280, January term, 1956, for revocation of the orders therein made for payment of proceeds of tax sales into court and for repayment of such sums as remain unclaimed into the hands of the county treasurer for the purpose of notifying claimants, if known, and for eventual escheat for the use of the County of Lehigh. Thirty days' notice of such intended application together with a copy of the petition shall

be given the Attorney General of the Commonwealth of Pennsylvania by registered mail.

*Opinion sur Rule to Show Cause*

HENNINGER, P. J., September 16, 1958.—On three separate occasions (to no. 318, January terms, 1952, no. 50, April term, 1955, and no. 230, January term, 1956), the Lehigh County Tax Claim Bureau paid into court all unclaimed moneys arising from the sale of real estate for the payment of tax claims.

On January 29, 1957, the bureau, as plaintiff, with all defendants excepting the Commonwealth of Pennsylvania, filed a petition for a declaratory judgment to determine (1) whether such moneys should be repaid to the county treasurer and (2) whether moneys now held by the county treasurer as the fiscal officer for the bureau should be retained by him as municipal treasurer under the Municipal Unclaimed Moneys Act of May 17, 1949, P. L. 1403, 27 PS §491, et seq.

In an opinion filed July 8, 1957, we decided that there was no provision in the law for paying into court money concerning which, although unclaimed, there was no dispute as to title. Under this opinion, the county treasurer was instructed to retain the funds now in his possession.

As to the moneys paid into court, the same opinion held that, while we felt that they had been paid into court without authority in law, although by the acquiescence and order of the court, we would order their return to the county treasurer only after notice to the Commonwealth of Pennsylvania, because the power of escheat resides in the Commonwealth as sovereign.

The bureau has ruled the Commonwealth to show cause why the money should not be repaid to the county treasurer. The Commonwealth has filed an answer challenging the county's eventual right to the money, but

has not advanced any reason why the money should have been paid into court in the first instance or why it should remain in the hands of the court.

We deem it best not to discuss the merits of the Commonwealth's contentions at this time when any opinion on the subject would be mere obiter dictum, embarrassing but not binding when a decision really matters.

Suffice it to say that we are simply correcting the error of having ordered the money paid into court and are returning it to its status quo ante that order. As we stated in our opinion and order of July 8, 1957, notice by the county treasurer to all parties concerned after he has received the money will begin the running of the period which will lead to escheat.

When the money is ready to be escheated is time enough to decide who is to be the beneficiary of the escheat, whether the Commonwealth for its own benefit or the Commonwealth as sovereign, but for the use or benefit of the county.

Now, September 16, 1958, the rule heretofore entered is made absolute and it is ordered and decreed that all moneys paid into court in nos. 318, January term, 1952, 50, April term, 1955 and 280, January term, 1956, plus any interest that may have been earned thereon and less any sums that may heretofore have been paid therefrom by order of this court and less also poundage and costs, be paid to the county treasurer of the County of Lehigh, to be retained by him for the benefit of any persons legally entitled thereto and for eventual escheat according to law after due and timely notice to such parties according to law and to the Attorney General of the Commonwealth of Pennsylvania. This order is made without prejudice to the right of the Commonwealth of Pennsylvania at the proper time to prosecute any claim to said money or any part thereof in its own right upon escheat thereof.